**Raymond G. MAXSON, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

**No. 97–1683.**

United States Court of Appeals for Veterans Claims.

July 6, 1999.

Ronald L. Smith, was on the brief, for the appellant.

John H. Thompson, Acting General Counsel; Ron Garvin, Assistant General Counsel; Carolyn F. Washington, Deputy Assistant General Counsel; and Gregory W. Fortsch, were on the brief, for the appellee.

Before KRAMER, HOLDAWAY, and GREENE, Judges.

GREENE, Judge:

The appellant, Raymond G. Maxson, appeals a July 31, 1997, Board of Veterans' Appeals (Board) decision that determined that his partial colectomy, received prior to active service, was not aggravated by his combat service and thus denied his reopened claim for VA service-connected benefits. The Court has jurisdiction over the case under 38 U.S.C. §§ 7252(a) and 7266(a). On May 17, 1999, the appellant moved for expedited consideration. For the following reasons, the Court will grant the appellant's motion and affirm the Board's decision.

## I. FACTS

In 1938, prior to his active service, the appellant underwent a partial colectomy for a megacolon (enlarged colon) at the Mayo Clinic in Rochester, Minnesota. Record (R.) at 18. A colectomy is an excision of a portion or all of the colon. WEBSTER'S MEDICAL DESK DICTIONARY 132 (1986) [hereinafter WEBSTER'S]. By July 1939, he was reported to be in very good condition. A September 1939 medical examination for reenlistment into the National Guard noted that he had had a colectomy, but did not note any residuals and found that he was physically qualified for further service. Supplemental (Suppl.) R. at 2. Upon entry on active duty in the U.S. Army in February 1941 (R. at 27, 146, 229), his medical examination report noted his abdominal scar from his colectomy and that his condition was "sound" (Suppl. R. at 1–4). In January 1942, he was admitted to the station hospital, Fort Ord, California, with a bowel obstruction (R. at 28, 209–11), and he reported at that time that he had been symptom free since his operation in 1938 (R. at 210).

While engaged in combat on Guadalcanal, the appellant suffered two attacks of malaria, one in December 1942 and one in February 1943. R. at 27. Also, a March 1943 service medical record (SMR) indicates that, while in Guadalcanal, he had four episodes of abdominal pain accompanied by nausea and vomiting and that the episodes each lasted several days. R. at 217. In March 1943, he was hospitalized for diphtheria. Major Hills, an Army physician, observed his partial colectomy and gave him a barium enema "which showed numerous abnormalities, but which functioned well." R. at 81. A June 1943 medical examination report noted his colectomy, his recurring malaria, and his attacks of diphtheria and viral pneumonia. R. at 223. The medical report also recorded that "[f]or several months [he] has suffered from headaches[,] insomnia, and loss of strength." *Id.* Further, the examination revealed "tenderness in the abdomen about a deeply scarred left rectal incision.... In view of the numerous illnesses it was felt advisable that he return to the [S]tates for prolonged convalescence." One of his SMRs summarized his medical condition from March 1943 until January 1945 as follows:

In March 1943, while in the Fiji Island[s], he contracted diphtheria and was hospitalized in the Eighteenth General Hospital for six weeks. Ten days after his dis-

charge, he had a virus pneumonia and was again hospitalized for a period of two weeks. Two weeks later, he had the tenth recurrence of his malaria and then was evacuated back to the U.S., arriving at Letterman General Hospital. He remained at this hospital only five days and then was transferred to McCloskey General Hospital, Temple, Texas, where he remained approximately six months. En route from overseas, he had the eleventh attack of malaria on the ship. At McCloskey General Hospital, he had the twelfth, thirteenth, and fourteenth attacks. After his discharge from McCloskey General Hospital, he reported for duty at Fort Sill Oklahoma, and on the day that he reported, he had the fifteenth attack and the most severe one that he has experienced. He remained in the hospital approximately two weeks and then did five weeks of duty at Fort Sill, whereupon he was transferred to Borden General Hospital, Chickasha, Oklahoma, where he had two additional attacks. He was finally dispositioned from this hospital on 22 July 1944.... In September 1944, while assigned at Camp Wallace, Texas, he had the eighteenth attack of malaria and was hospitalized at Fort Crockett, Texas, for eleven days. Since his disposition, [he] has been on duty at Camp Wallace.

R. at 147. Because of his malaria and neurasthenia, he was referred to a medical evaluation board. R. at 224. Neurasthenia is an emotional disorder characterized by easy fatigability and lack of motivation. WEBSTER'S 471. In the section of the appellant's medical separation examination captioned "ABDOMINAL WALL AND VISCERA," the examining physician wrote, "Spleen not palpable. No abdominal tenderness." Suppl. R. at 58–59. He was medically discharged from the Army in September 1945. His military records reveal that he was awarded the Combat Infantryman's Badge (CIB) for his combat duty in Guadalcanal. R. at 229.

In May 1989, the appellant filed a claim for service connection for residuals of his colectomy. R. at 254. With his claim, he submitted statements from members of his army unit on Guadalcanal who attested to their observations that he had experienced colon troubles during combat. R. at 256, 258, 310. A March 1990 rating decision denied his claim because his condition "existed prior to active military duty and was not chronically aggravated while on active service." R. at 288–91. During a January 1991 regional office (RO) hearing, the appellant testified that shortly before leaving for Guadalcanal, his company was in Los Angeles, California, awaiting deployment. R. at 318–35. At that time, he was admitted to sick bay because of a colon blockage. While in sick bay, he was given enemas but was unable to release them; he noted that the same thing had happened on the hospital ship. R. at 320. After arriving in Guadalcanal, his "blockage episodes" were taken care of by a corpsman at the Navy field hospital. R. at 321. The appellant attributed these episodes to the anxiety and diet he experienced during combat. At his hearing, he explained that before combat he was restricted to a special high-fiber, high-liquid diet which was not available to him in Guadalcanal. In Guadalcanal and during the fighting, he ate only C-rations. R. at 322. He also revealed that since leaving service, he has had to strain so hard for bowel movements that he has had two hernias. *Id.* A November 1991 Board decision affirmed the denial. R. at 337–47.

In May 1994, the appellant was examined by Dr. J.L. Bray after a barium enema. R. at 459. Dr. Bray observed a narrowed area of the rectum and evidence of diverticular disease where he had had his resection. *Id.* He also opined that the reason for the appellant's pain in that area was chronic diverticulitis, chronic constipation, and extreme difficulty defecating associated with his residual megacolon.

In August 1994, the appellant filed a request to reopen his claim. R. at 372–73. A September 1994 rating decision determined that no new and material evidence was presented. R. at 414–15. In January 1995, the RO received a letter from Dr. Owen T. Nelson, a private physician. R. at 420–422. Dr. Nelson opined that the appellant "has sustained disability resulting from an exacerbation of a colon condition while he was in the Guadalcanal campaign." R. at 420–22. He noted that after the appellant received a

series of required operations in 1938, he was placed on a special high-fiber, high-liquid diet, which was not available to him during his time in the Pacific theater. *Id.* Dr. Nelson's letter continued:

> Mr. Maxson states that, on several instances, he became so constipated that they attempted to do a tap water enema on him but, because of the stenosis I surmise exists at the junction where the diverting and new colostomies had been rejoined, he was unable to pass the enema back out again but had to wait for the fluid to reabsorb. Ultimately he was able to move stool again but the result of these fecal impactions would have been to dilate further the already pre-existing segment of megacolon.
>
> . . . .
>
> I am convinced that as a result of being overseas in combat on sea [sic] rations, the military service has aggravated the nature of Mr. Maxson's operation for megacolon and has left him with a much increased permanent problem from the megacolon. I believe that he merits serious consideration for disability rating as a result of this.

R. at 422. Dr. Nelson's letter prompted the RO to seek a medical opinion from a VA physician. R. at 427. Dr. Settihalli Rajender, Chief of Gastroenterology at a VA hospital, reported that, after reviewing the appellant's records, he found no evidence to indicate an increased level of colon disability associated with his active duty. R. at 429. Dr. Rajender noted that the appellant's SMRs lacked any references to gastrointestinal symptoms, except for a brief reference to "four episodes of colicky abdominal pain" accompanied by nausea and vomiting in Guadalcanal, for which no record exists of his seeking medical attention. *Id.* He also noted that these episodes seemed similar to the appellant's condition upon a January 1942 hospitalization with a diagnosis of having indigestion of undetermined cause. *Id.* A March 1995 rating decision continued the previous denials. R. at 431–32. The appellant filed a Notice of Disagreement (R. at 444), the RO issued a Statement of the Case (SOC) (R. at 434–40), and he appealed to the Board (R. at 442).

In May 1995, he submitted a letter from Dr. Johnson L. Thistle, a Mayo Clinic gastroenterologist who stated:

> It is not surprising that you had great difficulty while under combat conditions, and it is reasonable to presume that this further aggravated this congenital problem because of severe constipation. I expect that this secondary damage has made your bowel more difficult to manage over the years since this period of extraordinary aggravation during combat.

R. at 446.

In a September 1995 RO hearing, the appellant testified that he had had normal bowel movements after his surgery and until his combat deployment to Guadalcanal, but that he had not had a normal bowel movement since his time in combat. R. at 468–91. He related that when he had a bowel blockage during combat on Guadalcanal, a physician instructed a corpsman to give him an enema. R. at 477. He also testified that he has had chronic pain and abdominal distress since his discharge from service. *Id.* The RO confirmed the denial of his claim and issued a supplemental SOC. R. at 493–96, 498–504. In August 1996, the appellant submitted another statement from Dr. Nelson and additional statements from relatives, friends, and former members of his combat unit. R. at 506, 508, 510–11, 513, 530, 31. Dr. Nelson's letter noted that although the appellant has had chronic colon problems since his discharge from service, "he did not seek further attention at the VA because he knew that he was basically stuck with the colicky abdominal pain problems that he had been having since and during service in [Guadalcanal]." R. at 506. The other statements confirmed the appellant's observations of his medical problems related to his colon disorder.

The Board denied the appellant's claim for service connection for residuals of a partial colectomy. It determined that new and material evidence had been submitted and that his evidence established an entitlement to a presumption of aggravation under *Jensen v. Brown*, 19 F.3d 1413 (Fed.Cir.1994) and 38 C.F.R. § 3.306(b)(2) (1998). R. at 9. However, the Board found that the presumption of aggravation had been rebutted by clear

and convincing evidence. Specifically, the Board stated:

> [T]he absence of any medical evidence in the veteran's SMRs and post-service records that document permanent aggravation of the veteran's condition, the multiple entries that reflect the veteran's good health after his period of combat service, the medical opinion of Dr. Rajender that is based on the veteran's claims file and SMRs, and the [two lay statements] clearly and convincingly rebut the presumption of aggravation.

R. at 14. This appeal followed. The appellant contends that the Board erred by finding that the presumption of aggravation was rebutted in this case.

## II. APPLICABLE LAW

■ A person filing a claim for VA benefits has "the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a); *see Carbino v. Gober,* 10 Vet.App. 507, 509 (1997). The determination of whether a claim is well grounded is a matter of law that this Court reviews de novo. *See* 38 U.S.C. § 7261(a)(1); *Robinette v. Brown,* 8 Vet.App. 69, 74 (1995). The Court has held that for a claim to be well grounded, it must be accompanied by supportive evidence and that such evidence "must 'justify a belief by a fair and impartial individual' that the claim is plausible." *Tirpak v. Derwinski,* 2 Vet.App. 609, 611 (1992) (quoting 38 U.S.C. § 5107(a)). A well-grounded claim generally requires (1) medical evidence (diagnosis) of a current disability; (2) medical or, in certain circumstances, lay evidence of incurrence or aggravation of a disease or injury in service; and (3) competent evidence of a nexus between an in-service injury or disease and the current disability (medical evidence). *See Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), *aff'd per curiam,* 78 F.3d 604 (Fed.Cir.1996) (table); *see also Epps v. Gober,* 126 F.3d 1464, 1468 (Fed.Cir.1997) (expressly adopting the definition of a well-grounded claim set forth in *Caluza* ). Where the determinative issue involves medical causation, competent medical evidence is required for the claim to be well

grounded. *See Grivois v. Brown,* 6 Vet.App. 136 (1994).

The other applicable statutes, regulations, and precedents necessary for the disposition of this case are as follows:

> For the purposes of section 1110 of this title, every veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service.

38 U.S.C. § 1111. Section 1153 of title 38, U.S.Code, provides:

> A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease.

38 U.S.C. § 1153. Section 1154(b) of title 38, U.S.Code, provides:

> (b) In the case of any veteran who engaged in combat with the enemy in active service ... of the United States during a period of war, ... the Secretary shall accept as sufficient proof of service-connection of any disease or injury alleged to have been incurred in or aggravated by such service satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service, and, to that end, shall resolve every reasonable doubt in favor of the veteran. Service connection of such injury or disease may be rebutted by clear and convincing evidence to the contrary. The reasons for granting or denying service-connection in each case shall be recorded in full.

38 U.S.C. § 1154(b). The Secretary has implemented these statutes with 38 C.F.R. § 3.306, which provides:

(a) *General.* A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease.

(b) *Wartime service; peacetime service after December 31, 1946.* Clear and unmistakable evidence (obvious or manifest) is required to rebut the presumption of aggravation where the preservice disability *underwent an increase in severity* during service. This includes medical facts and principles which may be considered to determine whether the increase is due to the natural progress of the condition. Aggravation may not be conceded where the disability underwent no increase in severity during service on the basis of all the evidence of record pertaining to the manifestations of the disability prior to, during and subsequent to service.

(1) The usual effects of medical and surgical treatment in service, having the effect of ameliorating disease or other conditions incurred before enlistment, including postoperative scars, absent or poorly functioning parts or organs, will , not be considered service connected unless the disease or injury is otherwise aggravated by service.

(2) Due regard will be given the places, types, and circumstances of service and particular consideration will be accorded combat duty and other hardships of service. The development of symptomatic manifestations of a preexisting disease or injury during or proximately following action with the enemy or following a status as a prisoner of war will establish aggravation of a disability.

38 C.F.R. § 3.306(b) (emphasis added).

■ The Court has previously held that temporary or intermittent flare-ups during service of a preexisting injury or disease are not sufficient to be considered "aggravation in service" unless the underlying condition, not just the symptoms, has worsened. *See Hunt v. Derwinski,* 1 Vet.App. 292, 297 (1991). However, section 3.306 was promulgated to "follow[ ] the statutory mandate and create[ ] an evidentiary presumption in favor of the combat veteran." *See Jensen,* 19 F.3d at 1417. Further, in *Jensen,* the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has held that once the combat veteran provides "lay testimony or other informal evidence of symptomatic manifestations, whether temporary or otherwise, of incurrence or aggravation ... the government has the burden to rebut by clear and convincing proof that there has been no increase in the severity of the preexisting condition, thereby establishing lack of a statutory requirement, or that any increase was the result of natural progression." *See Jensen,* 19 F.3d at 1417; *Arms v. West,* 12 Vet.App. 188, 195–96 (1999) ("once a combat veteran's claim for service connection of a disease or injury alleged to have been incurred in or aggravated in combat service is well grounded ... then the claimant prevails on the merits *unless* VA produces 'clear and convincing' evidence to the contrary").

## III. ANALYSIS

■ In the decision on appeal, the Board initially determined that new and material evidence had been submitted to reopen the previously disallowed claim. *See Barnett v. Brown,* 83 F.3d 1380, 1383 (Fed.Cir.1996). The Court will defer to this determination. *See Elkins v. West,* 12 Vet.App. 209, 217 (1999). Thus, the first question the Court will address is whether the appellant has submitted a well-grounded claim. *See Caluza, supra* (establishing service connection generally requires (1) medical evidence of current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of disease or injury; and (3) medical evidence of nexus between claimed in-service disease or injury and current disability). A review of the appellant's service medical records, the medical records dated in April 1994, and the letters from Drs. Nelson and Thistle, convinces us that he has clearly presented evidence satisfying *Caluza* elements 1, 2, and 3, and thus has submitted a well-grounded claim.

As to *Caluza* element 2, even if Drs. Nelson and Thistle had not opined about the

appellant having sustained a permanent increase in disability, the appellant's service medical records indicate that he had four episodes of abdominal pain, nausea, and vomiting related to his colon condition while on Guadalcanal. R. at 217. There are also the lay statements from the appellant and from individuals who served with him on Guadalcanal, relating these symptoms to times during or proximate to combat. R. at 258, 296. Even so, under *Hunt*, which held that "temporary or intermittent flare-ups during service of a preexisting injury or disease are not sufficient to be considered 'aggravation in service,'" 1 Vet.App. at 297, it is questionable whether such evidence standing alone would be sufficient to well ground the appellant's claim concerning *Caluza* element 2. As to that question, section 3.306(b)(2) provides that "[t]he development of symptomatic manifestations of a preexisting disease or injury during or proximately following action with the enemy ... will establish aggravation of a disability." The Federal Circuit looked at section 3.306(b)(2) in *Jensen v. Brown*, 19 F.3d 1413, and held that it provides only a rebuttable presumption of aggravation [section 3.306(b)(2) presumption], and does not irrebuttably establish service connection, or even aggravation (i.e., *Caluza* element (2)). Nevertheless, the appellant's service medical records and lay evidence, combined with the section 3.306(b)(2) presumption, are sufficient to well ground his claim with respect to *Caluza* element 2. The Court notes that the lay statements mentioned above also relate the appellant's symptomatology to his preexisting colon condition; however, given the analysis provided in this paragraph, the Court need not address whether such statements are sufficient to show symptomatic manifestations of a *preexisting condition* for purposes of satisfying § 3.306(b)(2). *See Espiritu v. Derwinski*, 2 Vet.App. 492 (1992); *cf. Falzone v. Brown*, 8 Vet.App. 398 (1995).

■ Accepting the claim as well grounded, the next question is whether, at the merits stage, there is clear and convincing evidence that rebuts this combat veteran's claim of aggravation of his preexisting condition. *See* 38 U.S.C. § 1154(b); *Jensen* and *Arms*, both *supra*. In this case, the Board concluded that clear and convincing evidence existed to establish that there was no permanent increase in disability during service, i.e., to demonstrate, at the merits stage, that *Caluza* element 2 was not satisfied. In doing so, the Board relied primarily on the lack of any service or post-service treatment records showing that there was a permanent increase in disability and on the statement from Dr. Rajender who, after reviewing these records, had rendered an opinion that there was no evidence of an increased level of disability associated with service. The Court notes that, although the Board pointed to the fact that the letters from Drs. Nelson and Thistle came about some 52 years subsequent to combat, the same is true of the opinion of Dr. Rajender.

The Court does not need to decide whether its standard of review of the Board determination that clear and convincing evidence existed to rebut *Caluza* element 2, is deferential or de novo. The Court also left this question open in *Velez v. West*, 11 Vet.App. 148, 154 (1998), which noted that, because the appellant could not prevail under either standard, there was no need to resolve whether the Court's review of the Board's application of the "clear and convincing" standard under 38 U.S.C. § 1154(b) is under the deferential "arbitrary and capricious" standard of review or the nondeferential de novo standard of review. Similarly here, such clear and convincing evidence exists. The Board properly considered "all the evidence of record pertaining to the manifestations of the disability prior to, during and subsequent to service." 38 C.F.R. § 3.306(b)(1). In *Vanerson v. West*, 12 Vet.App. 254, 258 (1999), the Court stated that clear and convincing evidence means evidence that provides a "'reasonable certainty' of the truth of the fact in controversy." What is decisive in the conclusion that the Court reaches here is that, despite numerous pre–1944 entries regarding appellant's symptomatology, the evidence of record reveals that from 1944 to 1989 there is no record of any complaint, let alone treatment, involving the appellant's colon condition.

Additionally, because the Court holds that the record contains clear and convincing evidence to demonstrate, at the merits stage, that the appellant sustained no permanent

increase in disability during service, the Court need not consider the effect of *Arms* on *Caluza* elements 1 and 3. Moreover, because of such clear and convincing evidence, the Court further holds that the presumption of aggravation, provided for in 38 U.S.C. §§ 1111, 1153, 38 C.F.R. § 3.306(a), (b), [section 1153 presumption] is not for application. That presumption, which is applicable to both combat and non-combat veterans, applies only to *Caluza* element 2 and only after it has been demonstrated, at the merits stage, that a permanent increase in disability has occurred or, pursuant to section 3.306(b)(2), has been deemed to have occurred. At such time, under the section 1153 presumption, *Caluza* element 2 is deemed satisfied for purposes of service connection, unless clear and unmistakable evidence (i.e., evidence that is "undebatable," *see Vanerson, supra*) exists to show that the permanent increase in disability sustained in service is attributable solely to the natural progression of the disease. *See* 38 U.S.C. § 1153; 38 C.F.R. § 3.306(a).

## IV. CONCLUSION

Upon consideration of the record and the pleadings of the parties, the Court holds that the appellant has not demonstrated that the Board committed legal error that warrants remand. Accordingly, the Board decision is AFFIRMED.