Citation Nr: 1504640 
Decision Date: 01/30/15 Archive Date: 02/09/15

DOCKET NO. 08-39 535 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Lincoln, Nebraska


THE ISSUES

1. Entitlement to service connection for a sleep disorder.
 
2. Entitlement to service connection for a respiratory disorder.

3. Entitlement to service connection for ischemic heart disease.

4. Entitlement to service connection for an acquired psychiatric disability (other than posttraumatic stress disorder (PTSD)). 

5. Entitlement to an increased evaluation for PTSD, evaluated as 30 percent disabling prior to May 30, 2013 and as 50 percent disabling thereafter.


REPRESENTATION

Appellant represented by: Vietnam Veterans of America


WITNESS AT HEARING ON APPEAL

The Veteran 


ATTORNEY FOR THE BOARD

Department of Veterans Affairs


INTRODUCTION

The Veteran served on active duty from January 1962 to January 1965.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in Lincoln, Nebraska. 

In November 2012, the Board remanded the case for additional development.

In August 2012 and December 2014, the Veteran testified at video conference hearings before the undersigned Veterans Law Judge. Transcripts of the hearings are associated with the claims folder. At the December 2014 hearing, additional evidence was submitted along with a waiver of consideration of such evidence by the agency of original jurisdiction (AOJ).

(The issues of entitlement to service connection for a respiratory disorder and ischemic heart disease are addressed in the remand that follows the decision below.)


FINDINGS OF FACT

1. In December 2014, prior to the promulgation of a decision in the appeal, the Veteran indicated that he desired to withdraw the issues of entitlement to service connection for an acquired psychiatric disability other than PTSD and entitlement to higher ratings for PTSD.

2. Insomnia is likely caused by the Veteran's service-connected PTSD.


CONCLUSIONS OF LAW

1. The criteria for withdrawal of an appeal by the Veteran have been met with respect to the issue of entitlement to service connection for an acquired psychiatric disability other than PTSD. 38 U.S.C.A. § 7105(b)(2), (d)(5) (West 2014); 38 C.F.R. § 20.204 (2014).

2. The criteria for withdrawal of an appeal by the Veteran have been met with respect to the issue of entitlement to higher ratings for PTSD. 38 U.S.C.A. § 7105(b)(2), (d)(5) (West 2014); 38 C.F.R. § 20.204 (2014).

3. The Veteran has insomnia as a result of his service-connected PTSD. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.310 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Withdrawal

An appeal may be withdrawn as to any or all issues involved in the appeal at any time before the Board promulgates a decision. 38 C.F.R. § 20.204 (2014). Withdrawal may be made by the appellant or by his authorized representative. 38 C.F.R. § 20.204. In the present case, the Veteran's representative indicated during the December 2014 Board hearing that he wished to withdraw the issues of entitlement to service for an acquired psychiatric disability other than PTSD and entitlement to increased ratings for PTSD. The Board finds that the Veteran has withdrawn these appeals and, hence, there remain no allegations of errors of fact or law for appellate consideration. Accordingly, the Board does not have jurisdiction to review the appeals and they are dismissed.

II. Service Connection-Sleep Disorder

VA treatment records have associated the Veteran's trouble sleeping with his service-connected PTSD. A May 2013 VA neurology examination resulted in a diagnosis of insomnia, and a May 2013 VA PTSD examiner opined that the Veteran's PTSD had not caused or aggravated obstructive sleep apnea. Nevertheless, sleep disturbance was identified by this examiner as being a symptom of the Veteran's PTSD. The Board consequently finds that the Veteran's trouble sleeping has, at least in part, been due to insomnia, which in turn can likely be traced to PTSD. Moreover, difficulty with sleep has been listed in the rating decisions by the RO that have addressed the Veteran's disability evaluation for PTSD. Thus, it is clearly contemplated by the already service-connected disability. (The provisions of 38 C.F.R. § 4.130 indicate that "chronic sleep impairment" is a manifestation of psychiatric disability for rating purposes.) As such, the Board finds that service connection for insomnia is warranted.

The Board finds that the Veteran's currently diagnosed sleep apnea did not have its onset in service. Service treatment records (STRs) are silent regarding any complaints, treatment, or diagnosis relating to obstructive sleep apnea. Upon discharge from service, the Veteran reported no problems related to sleeping on his December 1964 report of medical history. The initial diagnosis of sleep apnea came in 2007, over 40 years following the Veteran's separation from service. With respect to negative evidence, the fact that there were no records of any sleep apnea complaints or treatment for many years weighs against the claim. See Maxson v. West, 12 Vet. App. 453, 459 (1999), aff'd sub nom. Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000) (it was proper to consider the veteran's entire medical history, including a lengthy period of absence of complaints).

The Board acknowledges that the Veteran is competent to give evidence about what he has experienced; for example, he is competent to discuss his current symptomatology and other experienced symptoms. See, e.g., Layno v. Brown, 6 Vet. App. 465 (1994). Furthermore, lay evidence concerning continuity of symptoms after service, if credible, is ultimately competent, regardless of the lack of contemporaneous medical evidence. Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). During his August 2012 hearing, the Veteran stated that he had endured continuing sleep problems since service. When asked when the sleep apnea started, he replied "probably only about ten, twelve years ago." See August 2012 Hearing Transcript at 12. An undated statement from the Veteran's wife, received in February 2012, indicates that the Veteran has snored ever since "the summer after he got back from Vietnam." Thus, his statements can be construed as alleging a continuity of obstructive sleep apnea since his military service. However, the Board finds that the allegations of continuity are not credible. The Veteran's STRs are negative for any findings related to sleep problems and obstructive sleep apnea. Additionally, post-service VA records make no mention of the Veteran's obstructive sleep apnea being attributable to his military service. These inconsistencies in the record weigh against the Veteran's credibility as to the assertion of continuity of symptomatology since service. See Madden v. Gober, 125 F.3d 1477, 1481 (Board entitled to discount the credibility of evidence in light of its own inherent characteristics and its relationship to other items of evidence); Caluza v. Brown, 7 Vet. App. 498, 512 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (upholding Board's finding that a veteran was not credible because lay evidence about a wound in service was internally inconsistent with other lay statements that he had not received any wounds in service). As such, continuity of symptomatology has not been established, and the Veteran's and his wife's statements regarding his sleep apnea, standing alone, do not provide probative information. 

Moreover, no competent medical professional has related the Veteran's current sleep apnea to his service. The May 2013 VA neurology examiner opined that the Veteran's sleep apnea was not related to military service. The Veteran's representative contends that this opinion is not adequate. See Informal Hearing Presentation at 2-3. However, the Board notes that the VA examiner conducted a review of the claims file, discussed the evidence, examined the Veteran, and provided rationale for his opinion. While not a model of clarity, this opinion adequately conveys that the Veteran's sleep apnea is not related to service. There is no indication that the VA examiner was not fully aware of the Veteran's past medical history or that he misstated any relevant fact. Therefore, this opinion is highly probative. See Owens v. Brown, 7 Vet. App. 429, 433 (1995) (the opinion of a physician that is based on a review of the entire record is of greater probative value than an opinion based solely on the veteran's reported history). The VA examiner reviewed the Veteran's subjective history, clinical findings, and rendered an opinion with supportive rationale. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). Thus, the Board considers this VA opinion adequate. There is no contrary medical opinion in the record, and neither the Veteran nor his representative has identified or alluded to such medical evidence or opinion. The record on appeal does not contain any medical evidence suggesting that the current sleep apnea can be attributed to the Veteran's active service.

The Board also finds that the Veteran's current sleep apnea is not secondary to his service-connected PTSD. There is no competent medical evidence that shows that this disability was caused or aggravated by PTSD. The May 2013 VA examiner opined that the Veteran's sleep apnea was not caused or aggravated by his PTSD and this medical opinion evidence is uncontradicted.


ORDER

The appeal with respect to the claim for entitlement to service connection for an acquired psychiatric disability other than PTSD is dismissed.

The appeal with respect to the claim for entitlement to an increased evaluation for PTSD, evaluated as 30 percent disabling prior to May 30, 2013 and as 50 percent disabling thereafter, is dismissed.

Entitlement to service connection for insomnia as due to PTSD is granted.



REMAND

Respiratory Disorder

The Veteran contends that he has a respiratory disorder, to include COPD, due to in-service exposure to herbicides, mustard gas, ionizing radiation, and/or asbestos. Specifically, he contends that he was exposed to herbicides (1) while stationed in Udorn, Thailand because he was in the vicinity of the base's perimeter while traveling back and forth from the barracks where he lived to his duty station, and (2) while waiting for an embassy flight from Saigon, Vietnam to Clark Air Force Base in the Philippines en route to the United States in January 1965. In the alternative, the Veteran contends that his respiratory disorder is secondary to his service-connected PTSD.

If a veteran served in the U.S. Army in Thailand during the Vietnam Era at one of the Royal Thai Air Force Bases, including the one at U-Tapao, and did not participate in certain activities near the air base perimeter, a copy of a Compensation and Pension (C&P) Service's "Memorandum for the Record" is to be placed in the veteran's claims file.

If the veteran timely furnished information concerning the approximate dates, location, and nature of the alleged herbicide exposure, such exposure cannot be conceded based on the evidence of record, and he has provided sufficient information to permit a search by the U.S. Army and Joint Services Records Research Center (JSRRC), a request is to be sent to the JSRRC for verification of exposure to herbicides.

The United States Court of Appeals for Veterans Claims has consistently held that evidentiary development procedures provided in VA's Adjudication Procedure Manual are binding. See Campbell v. Gober, 14 Vet. App. 142, 144 (2000); Patton v. West, 12 Vet. App. 272, 282 (1999).

The Veteran's DD 214 indicates that his military occupational specialty (MOS) was radio relay and carrier operator. A DD 215 establishes that he completed chemical, biological, and radiation (CBR) training in March 1964. Personnel records show that he was deployed with Company A 124th Signal Battalion to Thailand from September 1964 to January 1965.

A copy of C&P Service's "Memorandum for the Record" has been placed in the Veteran's claims file and his claimed exposure to herbicides has not been verified. As specific information concerning the dates, location, and nature of the Veteran's alleged herbicide exposure has been provided, a remand is consequently necessary so that a request can be sent to the JSRRC to attempt to verify such exposure.

Ischemic Heart Disease

The Board finds that the claim of entitlement to service connection for ischemia has the same basis as the claim of service connection for a respiratory disorder. (The Veteran contends that both conditions are due to herbicide exposure.) 

The Board also notes that, despite the presumption of service connection for ischemia based upon herbicide exposure, direct service connection can be established by showing that ischemia was otherwise incurred during or aggravated by service. See Combee v. Brown, 34 F.3d 1039, 1043 (Fed. Cir. 1994). Thus, the AOJ should obtain a medical opinion that addresses whether the Veteran's ischemia is directly related to his military service or secondary to his service-connected PTSD.

Accordingly, the case is REMANDED for the following action:

1. The AOJ should take all necessary steps, including contacting the Department of the Army, the JSRRC, and any other appropriate source, to obtain, to the extent feasible, any flight crew/passenger manifests for embassy flights operated from Saigon, Vietnam to Clark Air Force Base in the Philippines in January 1965.

All efforts to obtain these records must be documented in the claims file. Such efforts shall continue until the records are obtained or it is reasonably certain that they do not exist or that further efforts to obtain them would be futile.

2. The AOJ should prepare a summary of the Veteran's reports concerning his alleged exposure to herbicides in Thailand at the Royal Thai Air Force Base at Udorn from September 1964 to January 1965. This summary, along with a copy of the Veteran's DD Form 214 and any pertinent service personnel records, should be sent to the JSRRC to attempt to verify his reported herbicide exposure.

3. After the above-requested development has been completed, schedule an appropriate VA examination to determine the nature and likely onset of the currently diagnosed ischemic heart disease. The claims file, including a copy of this remand, must be reviewed in conjunction with the examination. All indicated studies or testing should be conducted. The examiner should answer the following questions: 

(a) Is it at least as likely as not, i.e., a 50 percent probability or greater, that the onset of the currently diagnosed ischemic heart disease is related to the Veteran's active service, to include the claimed exposure to herbicides?

(b) If not, is it at least as likely as not, i.e., a 50 percent probability or greater, that the currently diagnosed ischemic heart disease has been caused or aggravated (permanently worsened beyond normal progression) by the Veteran's service-connected PTSD?

The examiner must review and discuss the Veteran's lay statements, to include his December 2014 hearing testimony. The examiner should also consider evidence regarding the Veteran's smoking history.

A full and complete rationale for all opinions expressed must be provided. If the examiner determines that he/she cannot provide an opinion on the issue at hand without resorting to speculation, the examiner should explain the inability to provide an opinion, identifying precisely what facts could not be determined. In particular, he/she should comment on whether an opinion could not be rendered because the limits of medical knowledge have been exhausted or whether additional testing or information could be obtained that would lead to a conclusive opinion. See Jones v. Shinseki, 23 Vet. App. 382, 389 (2010). (The AOJ should ensure that any additional evidentiary development suggested by the examiner be undertaken so that a definite opinion can be obtained.)

4. Thereafter, readjudicate the claims remaining on appeal. If a benefit sought remains denied, issue a supplemental statement of the case and provide the Veteran and his representative the requisite period of time to respond. The case should thereafter be returned to the Board.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This case must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



________________________________
MARK F. HALSEY
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs