Citation Nr: AXXXXXXXX
Decision Date: 06/30/21 Archive Date: 06/30/21

DOCKET NO. 210510-159040
DATE: June 30, 2021

ORDER

Entitlement to service connection for bilateral hearing loss is denied.

Entitlement to service connection for tinnitus is denied.

FINDINGS OF FACT

1. The most probative evidence of record weighs against a conclusion that bilateral hearing loss was incurred in service; sensorineural hearing loss was not demonstrated within one year of service.

2. The evidence weighs against a finding that the Veteran's recurrent tinnitus was incurred in-service or within one year of service.

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for bilateral hearing loss have not been met. 38 U.S.C. §§ 1101, 1112, 1113, 1131, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.385, 4.87, Diagnostic Code (DC) 6100 (2018).

2. The criteria for entitlement to service connection for tinnitus have not been met. 38 U.S.C. §§ 1101, 1112, 1113, 1131. 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.326, 4.87, DC 6260.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the U.S. Navy from August 1956 to July 1958.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from April 2021 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Los Angeles, California. 

In his May 2021 notice of disagreement, the Veteran selected the Direct Review docket for appeal, indicating, "I do not want a Board hearing." See May 2021 VA Form 10182, Notice of Disagreement. He selected Direct Review by the Board which means that no evidence after the rating decision of April 2021 will be considered. 

The matter is before the Board to address the Veteran's appeal.

This case has been advanced on the docket pursuant to 38 U.S.C. § 7107(b) and 38 C.F.R. § 20.902(c). 

Service Connection

In order to prove service connection, there must be competent and credible evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus or link between the current disability and the in-service disease or injury. 

VA is required to give due consideration to all pertinent medical and lay evidence in evaluating a claim for disability benefits. 38 U.S.C. § 1154 (a). Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). 

Lay evidence cannot be determined to be not credible merely because it is unaccompanied by contemporaneous medical evidence. Buchanan v. Nicholson, 451 F.3d 1331, 1336-37 (Fed. Cir. 2006). However, the lack of contemporaneous medical evidence can be considered and weighed against a Veteran's lay statements. Id. Further, a negative inference may be drawn from the absence of complaints or treatment for an extended period. Maxson v. West, 12 Vet. App. 453, 459 (1999), aff'd sub nom. Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000).

After the evidence is assembled, it is the Board's responsibility to evaluate the entire record. See 38 U.S.C. § 7104 (a) (2012). When there is an approximate balance of evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each issue shall be given to the claimant. See 38 U.S.C. § 5107 (2012); 38 C.F.R. §§ 3.102, 4.3 (2017).

1. Entitlement to service connection for bilateral hearing loss

For the purpose of applying the laws administered by the VA, impaired hearing will be considered a disability when: (1) the auditory threshold for any of the frequencies of 500, 1000, 2000, 3000, and 4000 Hertz is 40 decibels or greater; or (2) the auditory thresholds for at least three of those frequencies are 26 decibels or greater; or (3) speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385 (2017). 

Prior to January 1967, all VA audiograms were conducted under an old standard. From January 1967 through December 1970, VA audiograms were conducted under either the old standard or the current standard. The Board considers these results under both standards. After December 1970, all VA audiograms were conducted under the current standard. Because the statute regulating VA hearing loss determinations is written under the current standard, the auditory threshold readings of examinations conducted under the old standard are adjusted to align with the current standard. When considering the auditory threshold levels under the old standard, the decibel reading is adjusted as follows:

(Hz) 500 1000 2000 3000 4000 

Threshold Increase 15 10 10 10 5

Hearing loss is a chronic disease that is found to occur in service if it manifested to a compensable degree in active service or, for hearing loss, within one year of separation. 38 C.F.R. §§ 3.307, 3.309. When a chronic disease is shown in service, "subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes." 38 C.F.R. § 3.303(b). The Board acknowledges that the lack of any evidence that the Veteran exhibited hearing loss during service is not fatal to his claim. See Ledford v. Derwinski, 3 Vet. App 87, 89 (1992). 

As noted by the Court in Hensley v. Brown, 5 Vet. App. 155, 159 (1993): "[W]here the regulatory threshold requirements for hearing disability are not met until several years after separation from service, the record must include evidence of exposure to disease or injury in-service that would adversely affect the auditory system and post-service test results meeting the criteria of 38 C.F.R. § 3.385...For example, if the record shows (a) acoustic trauma due to significant noise exposure in service and audiometric test results reflecting an upward shift in tested thresholds in-service, though still not meeting the requirements for "disability" under 38 C.F.R. § 3.385, and (b) post-service audiometric testing produces findings meeting the requirements of 38 C.F.R. § 3.385, rating authorities must consider whether there is a medically sound basis to attribute the post-service findings to the injury in service, or whether they are more properly attributable to intercurrent causes." 

 

Analysis

The Veteran contends that his bilateral hearing loss is the result of noise exposure during service, more specifically "acoustic trauma" while serving aboard the U.S.S. Preston (DD-795). See September 2019 VA Form 21-526EZ, Application for Disability Compensation. The medical evidence of record establishes that the Veteran has a current disability of bilateral hearing loss for VA purposes, and the Board finds that the Veteran satisfies the first element of service connection. Tinnitus is a disorder that the Veteran can attest he has and the Board finds that the first element of service connect for tinnitus is established. 

Contemporaneous medical evidence has greater probative value than the Veteran's reports of history. See Curry v. Brown, 7 Vet. App. 59 (1994). The record does not establish acoustic trauma or an upward shift in tested thresholds during service, nor does the record contain complaints of, treatment for, or diagnoses related to hearing issues in service. A review of the Veteran's service treatment records reveals two complaints for "Athlete's foot," with no further entries. See November and December 1957 Sick Call Report. The Veteran was a Yeoman/clerk during his active duty service, with a low probability of hazardous noise exposure. See July 1958 Certificate of Release or Discharge from Active Duty. Further, the Veteran stated that he wore "ear protection" when he was working on the "Captain's bridge." See March 2021 VA Hearing Loss and Tinnitus examination report. 

In August 1955, the Veteran was provided with a physical examination upon his enlistment into active duty service. His clinical evaluation was "Normal" for "Ears General...Drums," and his self-evaluation reflected "No Ear, Nose or Throat Trouble" or "Running Ears." At that time, the Veteran indicated that his "present health" was "good." See August 1955 Reports of Medical Examination and Medical History. At the time of his entry into active duty, the Veteran was provided with a second medical examination. His clinical evaluation was "Normal" for "Ears General" and "Drums," and his self-evaluation described "Good health" and "Ear, Nose, or Throat Trouble" due to "Tonsillectomy at age of 7" with "no seq(uella)." See August 1956 Reports of Medical Examination and Medical History. 

At his separation physical examination, a "Normal" evaluation was documented for "Ears General" and "Drums." The Veteran was determined "qualified for release to inactive duty" and was "physically qualified to perform active duty at sea and foreign service." See July 1958 Report of Medical Examination. A post-active service self-evaluation, during his Reserve duty, reflected "Excellent health," as reported by the Veteran, with "No Ear, Nose, or Throat Trouble" or "Running Ears." See January 1960 Report of Medical History. 

Audiometry results for the Veteran reflect that whispered voice testing was used during enlistment, entry, and separation examinations, with a score of 15 for both the right and left ears at each examination. See August 1955, August 1956, and July 1958 Reports of Medical Examination. While potentially more accurate testing is used in contemporary hearing evaluations, the Board notes that the whispered voice test was common in custom and usage for the period of the Veteran's service. The first indication of hearing loss in the record appears in the Veteran's claim for entitlement to service connection in September 2019. See September 2019 VA Form 21-526EZ, Application for Disability Compensation. 

The Veteran was provided with an in-person VA medical examination in March 2021. The claims file was reviewed, and the examiner considered the statements of the Veteran, including the fact that his hearing affects the ordinary conditions of daily life and work. The Veteran reported that he has trouble hearing in groups and with any background noise, always saying "huh." Air conduction Pure-tone threshold testing in March 2021 produced the following results:

Right Ear 

A B C D E F G

500 Hz* 1000 Hz 2000 Hz 3000 Hz 4000 Hz 6000 Hz 8000 Hz

30 25 55 75 80 85 70

 

Left Ear 

A B C D E F G

500 Hz* 1000 Hz 2000 Hz 3000 Hz 4000 Hz 6000 Hz 8000 Hz

30 25 35 70 75 90 75

The Pure-tone threshold at 500 Hz is not used in calculating the Pure-tone threshold average for evaluation purposes but is used in determining whether hearing impairment reaches the level of a disability for VA purposes. The Pure-tone threshold average requires the decibel (dB) levels at each of the required frequencies (1000 Hz, 2000 Hz, 3000 Hz, and 4000 Hz) to be recorded for the test to be valid for determination of hearing impairment. 

There were no frequencies that could not be tested, and the test results were valid for rating purposes. The average Pure-tone threshold for the right ear, columns B E, was 58.75 dB. The average Pure-tone threshold for the left ear, columns B E, was 51.25 dB. Results for the Maryland CNC speech discrimination test, appropriate for use with this Veteran, produced a score of 84 percent in the right ear and 92 percent in the left ear. Acoustic immittance was "Normal" in both the right and left ears. Ipsilateral and contralateral acoustic reflexes were "Abnormal" in both the right and left ears. See March 2021 VA Hearing Loss and Tinnitus examination report. 

The Veteran was diagnosed with sensorineural hearing loss in the frequency range of 500 4000 HZ for both the right and left ears and sensorineural hearing loss in the frequency range of 6000 Hz or higher frequencies in both the right and left ears. The examiner concluded that the Veteran's right and left ear hearing loss was less likely than not (less than a 50%) probability caused by or a result of an event in military service. In formulating her opinion, the examiner pointed to the normal hearing test in the Veteran's separation examination. See March 2021 VA Hearing Loss and Tinnitus examination report. The examiner specifically noted that the onset of tinnitus is linked to a specific event that occurred 5 years after separation from the Navy. The Veteran has provided no information to explain how hearing loss and tinnitus developed over the years and there is not medical evidence to support such a link. 

Assuming arguendo that the Board interpreted the Veteran's statement, "I have a lot of trouble hearing people in groups and in background noise" to indicate that his hearing loss has continued since service, an actual diagnosis of sensorineural hearing loss requires objective, medical testing to determine whether it is severe enough to be considered a disability for VA compensation purposes. See Jandreau v. Nicholson, 492 F.3d 1372, 1376, 1377 (Fed. Cir. 2007) (noting general competence to testify as to symptoms but not to provide medical diagnosis).

Based on the evidence in the record, including service treatment records, a July 1958 separation examination, and a January 1960 report by the Veteran of "Excellent health" and "No Ear, Nose, or Throat Trouble," the Veteran does not meet the requirements for an in-service event or nexus to service. In addition, the Veteran is not entitled to presumptive service connection, either by diagnosis in-service, within the prescribed time limits after service, or through continuity of symptomatology, and he is not entitled to the presumption of an in-service incurrence, aggravation in-service, or nexus to service. 

Conclusion

In summary, a review of the Veteran's service treatment records do not contain any complaints, treatment, or diagnosis of hearing loss, and the Veteran's clinical and self-evaluations at separation and during Reserve service do not reflect any findings or complaints for hearing conditions. The Veteran first reported hearing loss in September 2019, more than 60 years after service. A greater weight of the evidence is against an award of service connection. 

The Veteran alleges injury to his hearing while in-service. The Board notes that the Veteran is competent to report the onset and continuity of hearing loss symptoms. However, the question of whether the Veteran's hearing loss is related to his active service falls outside the realm of common knowledge of a lay person. See Kahana v. Shinseki, 24 Vet. App. 428 (2011); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Opining on the etiology of hearing loss requires the expertise of a medical professional, particularly when there has been a significant passage of time without any documentation of symptomatology. While the Veteran can report symptoms that he experiences, he does not have the necessary training to offer medical opinions. 

There is no evidence in the record of a hearing condition or of hearing trauma, which was adequately addressed in the VA examination. Hearing loss is a chronic disease that is found to occur in service if it manifested to a compensable degree in active service or within one year of separation. 38 C.F.R. §§ 3.307, 3.309 (2017). When a chronic disease is shown in service, "subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes." 38 C.F.R. § 3.303(b) (2017). The Veteran does not meet the requirements for presumptive service connection. 

To the extent the Veteran may be competent to opine as to medical etiology, the Board finds that the Veteran's lay claims in the present case are outweighed by the medical evidence of record, including the March 2021 VA examination. The examiner has the training, knowledge, and medical expertise on which to rely and form an opinion. The Board has considered the statements of the Veteran and finds the medical evidence more probative. Therefore, the Board affords more weight to the opinion of the medical professional. 

The March 2021 VA opinion is the most probative evidence of record on the question of diagnosis and nexus to service. The opinion was based on an extensive review of all of the evidence, including statements from the Veteran, the August 1955 and 1956 and July 1958 testing, the Veteran's treatment records, and the Veteran's in-service military occupational specialty (MOS) and civilian occupations, was supported by a detailed rationale, provided data to support any conclusions, and provided a clear and reasoned analysis, the source of the most probative value in a medical opinion. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). The March 2021 VA examiner opinion is consistent with the evidence of record.

The VA examiner opinion provides compelling evidence against the Veteran's claim for service connection. There is no competent, credible evidence to refute the VA examiner opinion. The weight of the probative evidence of record is against a finding that the Veteran's hearing condition is causally or etiologically related to any disease, injury, or incident, in-service. Therefore, the Veteran does not meet the criteria under 38 C.F.R. § 4.87, DC 6100, for entitlement to service connection for bilateral hearing loss, and his claim must be denied.

In reaching the conclusions stated above, the Board has considered the applicability of the benefit of the doubt doctrine. The rule does not apply when the Board finds that a preponderance of the evidence is against the claim. 38 U.S.C. § 5107; 38 C.F.R. § 3.102 (2018); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).

2. Entitlement to service connection for tinnitus

The Veteran contends that his bilateral tinnitus is the result of noise exposure during service, more specifically "acoustic trauma" while serving aboard the U.S.S. Preston (DD-795). See September 2019 VA Form 21-526EZ, Application for Disability Compensation. Medical evidence of record establishes that the Veteran does have a current diagnosis of tinnitus for VA purposes. As such, the Board finds that the Veteran has satisfied the first element of service connection. 

Because tinnitus is "subjective" and cannot be tested, its existence is generally determined by whether the veteran claims to experience it. For VA purposes, tinnitus diagnosis is determined to be a disorder with symptoms that can be identified through lay observation alone. See Charles v. Principi, 16 Vet. App. 370 (2002).

 

Analysis

Contemporaneous medical evidence has greater probative value than the Veteran's reports of history. See Curry v. Brown, 7 Vet. App. 59 (1994). The reported history of the Veteran's tinnitus is that in January 1963, at which time he was in New York and the temperature was 17 degrees, he experienced an issue with the latch on the hood of his car. While attempting to repair the malfunction, the Veteran reported that his ears froze and turned black, and he required medical attention. He reported intermittent, bilateral tinnitus since that time. See March 2021 VA Hearing Loss and Tinnitus examination report. 

Clinical and self-evaluations pre-service, in-service, and post-service reflect "Normal Ears General...Drums," and "No Ear, Nose or Throat Trouble." See August 1955, August 1956, July 1958, and January 1960 Reports of Medical Examination and History. The Veteran also reported, "My health is good (See August 1955 Report of Medical History), Good health (See August 1956 Report of Medical History)," and "Excellent health (See January 1960 Report of Medical History)." Further, the Veteran's service treatment records do not contain any complaints, treatment, or diagnoses for hearing-related conditions. 

Tinnitus is first reported in the record in September 2019. See September 2019 VA Form 21-526EZ, Application for Disability Compensation. The Veteran was provided with a VA medical examination in March 2021. In addition to reporting tinnitus since January 1963, the Veteran reported no functional impact on his ability to work or in the ordinary conditions of daily life. The examiner concluded that the Veteran's tinnitus was less likely than not (less than 50% probability) caused by or a result of military noise exposure. In formulating her opinion, the examiner pointed to the Veteran's report of acoustic trauma in January 1963, 5 years after separating from active duty service. See March 2021 VA Hearing Loss and Tinnitus examination report. 

Based on the evidence in the record, including service treatment records, a July 1958 separation examination, a January 1960 report by the Veteran of "Excellent health" and "No Ear, Nose, or Throat Trouble," and the Veteran's statements to the March 2021 VA examiner, the Veteran does not meet the requirements for an in-service event or nexus to service. Further, the Veteran is not entitled to presumptive service connection, either by diagnosis in-service, within the prescribed time limits after service, or through continuity of symptomatology, and he is not entitled to the presumption of an in-service incurrence, aggravation in-service, or nexus to service. 

Conclusion

In summary, a preponderance of the evidence is against the claim for service connection for tinnitus. The Veteran's service treatment records are negative for complaints, treatment, or diagnoses of tinnitus. The first complaint of tinnitus was in the Veteran's September 2019 claim, more than 60 years after service. The Veteran's statement regarding the onset of tinnitus in January 1963 at his March 2021 VA examination is evidence against both direct and presumptive service connection. 

To the extent the Veteran may be competent, or credible, to opine as to medical etiology, the Board finds that the Veteran's lay assertions in the present case are consistent with the medical evidence of record, including the March 2021 VA examination. The examiner has the training, knowledge, and medical expertise on which to rely and form an opinion. The Board has considered the statements of the Veteran that he experienced "acoustic trauma" in service and finds the medical evidence more probative. The greater weight of the evidence is against a finding of elements two and three for service connection, an in-service event or aggravation and a nexus to military service. 

The March 2021 VA opinion is the most probative evidence of record on the question of diagnosis and nexus to service. The opinion was based on an extensive review of all of the evidence, including statements from the Veteran, the Veteran's treatment records, and the Veteran's in-service MOS and civilian occupations, was supported by a detailed rationale, provided data to support any conclusions, and provided a clear and reasoned analysis, the source of the most probative value in a medical opinion. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). The March 2021 VA examiner opinion is consistent with the evidence of record, including the Veteran's statement regarding onset of tinnitus in January 1963.

The VA examiner opinion provides compelling evidence against the Veteran's claim for service connection. The Veteran contends that his claimed disability exists and is related to his active service. This opinion is of no probative value, and while the Veteran is competent to report on symptoms, he lacks the medical expertise needed to diagnose a tinnitus condition or to attribute it to active military service. There is no competent, credible evidence to refute the VA examiner opinion. The weight of the probative evidence of record is against a finding that the Veteran's tinnitus condition is causally or etiologically related to any disease, injury, or incident, in service. The Veteran does not meet the criteria under 38 C.F.R. § 4.87, DC 6260, for entitlement to service connection for a tinnitus condition. Therefore, service connection is not warranted, and his claim must be denied.

In reaching the conclusions stated above, the Board has considered the applicability of the benefit of the doubt doctrine. The rule does not apply when the Board finds that a preponderance of the evidence is against the claim. 38 U.S.C. § 5107; 38 C.F.R. § 3.102 (2018); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).

 

 

MARJORIE A. AUER

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board B. Small, Attorney Advisor

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.