http://www.va.gov/vetapp16/Files4/1630472.txt

Citation Nr: 1630472 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 16-07 355 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Salt Lake City, Utah

THE ISSUES

1. Entitlement to service connection for bilateral hearing loss.

2. Entitlement to service connection for tinnitus.

3. Entitlement to service connection for a respiratory disability, to include asthma or asbestosis, but not chronic obstructive pulmonary disease (COPD).

4. Entitlement to service connection for COPD.

REPRESENTATION

Appellant represented by: James M. McElfresh II, Agent

ATTORNEY FOR THE BOARD

J. Dupont, Associate Counsel
INTRODUCTION

The appellant is a Veteran who served on active duty from March 1956 to January 1960. These matters are before the Board of Veterans' Appeals (Board) on appeal from a June 2013 rating decision by the Salt Lake City, Utah, Department of Veterans Affairs (VA) Regional Office (RO). The Veteran disagreed with that decision and submitted additional evidence in support of his claim. An August 2014 rating decision confirmed and continued denials for the above issues; the Veteran was notified via letter dated August 19, 2014. In October 2014, VA received new and material evidence in the form of a lay statement from the Veteran's brother. On August 21, 2015, VA received a VA Form 9 which expressed disagreement with the prior decision; the correspondence was postmarked on August 18, 2015. On August 26, 2015, the RO notified the Veteran that such disagreement was untimely. In September 2015, he filed a claim to reopen the issues. A December 2015 rating decision declined to reopen the claims finding that new and material evidence had not been received. 

Although the RO most recently characterized the issues as whether new and material evidence has been submitted to reopen the claims, the Board notes that new and material evidence was received in October 2014. Furthermore, the notice of disagreement was postmarked August 18, 2015, prior to expiration of the one year period which began August 19, 2014, the date of the notification letter; as such, it was timely filed. 38 U.S.C.A. § 7105(b)(1) (West 2014); 38 C.F.R. § 20.305(a) (2015). Accordingly, the Board finds that new and material evidence is not required and review of the record on a de novo basis is warranted. The Veteran's claim has been recharacterized as reflected on the cover page. The period on appeal is from May 6, 2011, the date of the original claim. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issues of service connection for COPD and for a respiratory disability (to include asthma or asbestosis, but not COPD) are addressed in the REMAND portion of the decision below and are being REMANDED to the Agency of Original Jurisdiction (AOJ).
FINDINGS OF FACT

1. A hearing loss disability was not manifested in service; sensorineural hearing loss was not manifested in the first postservice year; and the Veteran's current bilateral hearing loss disability is not shown to be related to his service.

2. It is reasonably shown that the Veteran's tinnitus became manifest in service and has persisted since.

CONCLUSIONS OF LAW

1. Service connection for bilateral hearing loss is not warranted. 38 U.S.C.A. 
 §§ 1112, 1113, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309 (2015).

2. Service connection for tinnitus is warranted. 38 U.S.C.A. §§ 1131, 5107(b) (West 2014); 38 C.F.R. §§ 3.102 , 3.303 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act of 2000 (VCAA)

VA's duty to notify was satisfied by a June 2011 letter. See 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2015); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). The Veteran's service treatment records (STRs) and pertinent postservice treatment records have been secured. He was afforded a VA examination (fee basis) specific to bilateral hearing loss and tinnitus in August 2011. The Board finds the examination report adequate for adjudication purposes; it reflects familiarity with the entire record, describes a thorough examination, and includes adequate rationale for the opinions offered. See Barr v. Nicholson, 21 Vet. App. 303 (2007). It is not alleged that any pertinent evidence remains outstanding. The Board finds that the record as it stands includes adequate competent evidence to allow the Board to decide the claims. VA's duty to assist is met. 

Legal Criteria

Service connection may be granted for disability due to disease or injury incurred in or aggravated by active military service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. Service connection may be granted for a disease initially diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38. C.F.R. § 3.303(d).

To substantiate a claim of service connection, there must be evidence of: (1) a current claimed disability; (2) incurrence or aggravation of a disease or injury in service; and (3) a nexus between the current disability and the disease or injury in service. See Shedden v. Principi, 281 F.3d 1163, 1166-67 (Fed. Cir. 2004). The determination as to whether these requirements are met is based on an analysis of all the evidence of record and an evaluation of its credibility and probative value. Baldwin v. West, 13 Vet. App. 1 (1999); 38 C.F.R. § 3.303(a). 

For some "chronic diseases," presumptive service connection is available. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309. With "chronic disease" shown as such in service (or within the presumptive period under § 3.307), so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b). For the showing of a 'chronic disease' in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. 38 C.F.R. § 3.303(b). If chronicity in service is not established, a showing of continuity of symptoms after discharge is required to support the claim. Id. If not manifest during service, where a veteran served continuously for 90 days or more during a period of war, or during peacetime service after December 31, 1946, and the 'chronic disease' became manifest to a degree of 10 percent within 1 year from date of termination of such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 C.F.R. § 3.307. The term "chronic disease," whether as shown during service or manifest to a compensable degree within a presumptive window following service, applies only to those disabilities listed in 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Hearing loss disability is considered an organic disease of the nervous system. 

For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies of 500, 1,000, 2,000, 3,000 and 4,000 Hertz is 40 decibels or greater; or when the thresholds for at least three of these frequencies are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385 (2015).

In each case where service connection for any disability is being sought, due consideration shall be given to the places, types, and circumstances of such Veteran's service as shown by such Veteran's service record, the official history of each organization in which such Veteran served, such Veteran's medical records, and all pertinent medical and lay evidence. 38 U.S.C.A. § 1154(a).

Factual Background and Analysis

Initially, the Board notes that it has reviewed all of the evidence in the Veteran's record, with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Hence, the Board will summarize the relevant evidence as deemed appropriate, and the Board's analysis will focus specifically on what the evidence shows, or fails to show, as to the claims.

Bilateral Hearing Loss

The Veteran asserts that he has bilateral hearing loss due to hazardous noise exposure in service aboard Navy ships. In June 2011 and December 2015, he submitted journal articles pertaining to noise control on ships and ship silencing programs. One of the articles explains that "Navy personnel work and live in noise levels that put them at risk for Noise Induced Hearing Loss (NIHL) and tinnitus." Another article discusses sources of noise such as the flight deck, motors, engines, laundries, pumps, and compressors. The Veteran's DD 214 reflects that his military occupation was a pipe fitter apprentice; he similarly reported that he was a plumber. See July 2013 Report of General Information.

An essential element of a service connection claim is that the Veteran must have proof of current disability. Upon August 2011 VA (fee basis) audiology examination, the Veteran reported that he has experienced bilateral hearing loss for 20 years (so since approximately 1991, three decades after service) and was diagnosed in May 2011. Upon objective examination, the following pure tone thresholds, in decibels, were noted at the indicated frequencies:

HERTZ

500
1000
2000
3000
4000
LEFT
45
40
35
55
50
RIGHT
40
40
45
45
50

The Veteran's pure tone threshold averages were 45 for both ears. His Maryland CNC speech recognition score was 100 percent for the left ear and 96 percent for the right ear. The diagnosis was bilateral sensorineural hearing loss; a current hearing loss disability is shown. 

The second essential element of a service connection claim is in-service incurrence or aggravation of a relevant disease or injury. The Veteran's STRs are unremarkable for complaints of, treatment for, or diagnosis of hearing loss while in service. However, Veterans Benefits Administration (VBA) Fast Letter 10-35 (September 2, 2010) lists the "Utilitiesman" duty position as entailing a "Moderate" chance of exposure to hazardous noise. Accordingly, and in consideration of his statements regarding exposure to loud weapons such as the 3"/50 caliber gun above deck, exposure to hazardous noise is conceded for purposes of establishing a relevant in-service event. 

The final essential element of a service connection claim is a nexus between the injury in service and the Veteran's current disability. Upon entry into service, a March 1956 report of medical examination noted clinically normal ears and drums and a 15/15 whisper test bilaterally; the Veteran denied ear trouble. The STRs are unremarkable for complaints of, treatment for, or diagnosis of hearing loss while in service. Upon separation from service, a January 1960 report of medical examination showed clinically normal ears and drums, as well as a 15/15 whisper test. Although the Veteran reported that he believes hearing loss began while in service, he also reported that he has had the disability for 20 years, so approximately three decades after separation from service. See August 2011 audiology examination report. 

The earliest postservice clinical record pertaining to hearing loss is a May 2011 private clinical record from Dr. C.H. The record notes that the Veteran has decreased hearing and tinnitus. No etiological opinion was provided. The lapse of time between service separation and the earliest documentation of current disability is a factor for consideration in deciding a service connection claim. In the appropriate circumstance, VA may consider the absence of any indication of a relevant medical complaint until so relatively long after service as one factor, just not the only or sole factor, in determining whether a disease or an injury in service resulted in chronic or persistent residual disability. See Maxson v. West, 12 Vet. App. 453, 459 (1999), aff'd sub nom. Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000). See also Mense v. Derwinski, 1 Vet. App. 354 (1991) (holding that VA did not err in denying service connection when the Veteran had failed to provide evidence demonstrating continuity of symptomatology and had failed to account for the lengthy time period following his service during which there was no clinical documentation of the claimed disorder). 

The only medical opinion that discusses the etiology of the hearing loss disability in the record is from the August 2011 VA (fee basis) examiner. He noted that the Veteran worked as a pipe fitter, ship fitter, and fired weapons while in service; following separation from service, he worked as a welder for 50 years without hearing protection and participated in hunting or recreational shooting, used power tools, and rode motorcycles or personal watercraft without hearing protection. The examiner opined that the Veteran's bilateral hearing loss is less likely than not associated with military noise exposure. He explained that the record shows normal hearing upon entrance to service and at separation from service, does not show a threshold shift in hearing during service, and shows a postservice history of welding without hearing protection for 50 years. As the opinion is based on a thorough examination, reflects a familiarity with the relevant medical and occupational history, and includes an adequate rationale with citation to clinical data in the record, it is highly probative evidence in this matter; as there is no adequate probative evidence to the contrary, it is persuasive. Accordingly, the preponderance of the evidence shows that the Veteran's hearing loss is not related to his service/noise trauma therein. 
 
The Board has also considered the Veteran's report that his hearing loss may have started in service. However, the evidence does not show that he has the necessary training or expertise to render a competent opinion on this complex medical issue, which cannot be based on lay observation alone given the time that elapsed between his service and his conflicting report of onset three decades after separation from service. See Jandreau v. Nicholson, 492 F. 3d 1372, 1376-77 (Fed. Cir. 2007); Barr v. Nicholson, 21 Vet. App. 303, 309 (2007); Layno v. Brown, 6 Vet. App. 465, 469-71 (1994). Thus, his opinion by itself cannot support his claim, and is probatively outweighed by the contrary findings of the VA compensation examiner, who is an objective medical professional specializing in audiology who considered his statements and the pertinent evidence of record and found against such a relationship or cause-and-effect correlation. See Id.; see also King v. Shinseki, 700 F.3d 1339, 1345 (Fed. Cir. 2012) (affirming the Court's conclusion that the Board did not improperly discount the weight of a lay opinion in finding a medical expert's opinion more probative on the issue of medical causation).

Finally, because there is no competent evidence suggesting that the Veteran's current hearing loss initially manifested during his service or within a year following his discharge from service, service connection is not warranted based on chronicity (permanency) in service or continuity of symptoms after service, and is not warranted on a presumptive basis for hearing loss alternatively manifesting to a compensable degree within one year of separation. See 38 C.F.R. §§ 3.303(b), 3.307(a), 3.309(a).

In summary, because the preponderance of the evidence is against this claim, the benefit-of-the-doubt rule does not apply, and service connection for hearing loss is denied. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

The Board is grateful to the Veteran for his honorable service and regrets that a more favorable outcome could not be reached as to this claim. 

Tinnitus

The Veteran contends that his tinnitus is due to in-service noise exposure. As noted above, a May 2011 private clinical record reflects an impression of tinnitus. Additionally, he was diagnosed with tinnitus upon VA (fee basis) audiology examination in August 2011. And, as noted above, exposure to hazardous noise is conceded for purposes of establishing a relevant in-service event. Accordingly, two of the three essential elements of a service connection claim are met.

Turning to the question of whether there is a nexus between the current shown disability and service, the evidence shows that the Veteran reported that he believes his tinnitus onset in service and that it has been constantly present since separation from service in 1960. See August 2011 audiology examination report. A lay person is competent to report tinnitus. See Charles v. Principi, 16 Vet. App. 370 (2002) (on the question of whether the veteran has a chronic condition since service, the evidence must be medical unless it relates to a condition as to which, under case law, lay observation is competent). His lay testimony is competent evidence of a current diagnosis of tinnitus, manifestation of tinnitus during service, and continuing symptoms since. Absent any reason to question the veracity of his statements, such testimony is credible evidence which reasonably shows that his current tinnitus had its onset during service, and has persisted since. As the record does not show persuasive reasons to question his credibility as to tinnitus, his testimony is accepted as factual evidence. 

The Board acknowledges that the August 2011 examiner found that the Veteran's tinnitus was less likely than not related to service as he opined that it is at least as likely as not associated with hearing loss. However, the Board places low probative value on this opinion, as the examiner's rationale does not pertain to tinnitus and does not address the Veteran's lay statements regarding onset and continuity of symptomatology. Given the Veteran's statements regarding his tinnitus, the Board resolves reasonable doubt in his favor and accepts his competent reports of ongoing symptoms since service as credible with respect to having a continuity of symptoms after service. 38 U.S.C.A. § 5107(b) (West 2014); 38 C.F.R. § 3.102 (2015). The requirements for establishing service connection for tinnitus are met; service connection for tinnitus is warranted.
 

ORDER

Entitlement to service connection for bilateral hearing loss disability is denied.

Entitlement to service connection for tinnitus is granted.

REMAND

COPD and a Respiratory Disability (to Include Asthma or Asbestosis, but not COPD)

The Veteran asserts that he has COPD and asthma/asbestosis as a result of exposure to asbestos in service. Specifically, he reported that he worked for three to four months removing asbestos material from several ships and replacing such with fiberglass. See May 2011 private clinical record. The Veteran's DD 214 reflects that his military occupation was a pipe fitter apprentice; he similarly reported that he was a plumber. See July 2013 Report of General Information. The VA Adjudication Procedure Manual, M21-1MR provides a non-exclusive list of occupations that have higher incidents of asbestos exposure. Notably, work in shipyards and work with asbestos pipe products are listed. Additionally, the record reflects that the Veteran smoked approximately one pack of cigarettes a day for 25 to 30 years. See May 2011 private clinical record; see also August 2013 VA examination report.

The Veteran's STRs show one report of shortness of breath and back pain in November 1959; the lungs were clear and the chest x-ray was negative; the impression was questionable early pleurisy. No subsequent reports of, or treatment for, breathing problems were noted in service. 

The first postservice clinical record pertaining to respiratory problems is a private May 2011 clinical record from Dr. C.H. which notes impressions of COPD and asbestosis of the pleura. Etiological opinions were not provided, and no additional records from the provider are in the record. As this appeal must be remanded (as explained below), VA should attempt to obtain any additional records from Dr. C.H., if they exist, as such records may help substantiate his claims. 

Upon August 2013 VA (fee basis) respiratory condition examination (found in 'Virtual VA'), the diagnosis was asthma; chest x-ray and pulmonary function tests did not support a diagnosis of COPD. The examiner opined that asthma was less likely than not related to service. An addendum medical opinion was obtained in August 2014, from a different provider; again, asthma was opined to be less likely than not related to service. However, as part of the provided rationale, the examiner stated, "No diagnosis of asbestosis has ever been made." As noted above, a May 2011 private provider assessed asbestosis of the pleura. Accordingly, the Board finds the August 2014 addendum opinion inadequate as it is based on an incorrect factual basis - that asbestosis has never been diagnosed in the record. Based on the conflicting diagnoses of record and the inadequate rationale provided in the August 2014 VA addendum opinion, a VA examination is necessary to reconcile the medical findings. 

Finally, the Veteran submitted several journal articles in support of his respiratory claims in June 2013, December 2015, and February 2016. The articles discuss topics such as asthma, COPD, occupational lung diseases, nonmalignant diseases related to asbestos, and areas of asbestos exposure risk on U.S. Naval ships. As the appeal is being remanded for a new medical examination and opinion to reconcile previous findings, the examiner should consider and comment upon these submissions.
 

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. The AOJ should ask the Veteran to identify the provider(s) of any and all evaluations and/or treatment he has received for respiratory conditions (specifically including Dr. C.H., who diagnosed COPD and asbestosis in May 2011), and to provide the authorizations necessary for VA to secure any private records of such evaluations and treatment. The AOJ should secure for the record complete clinical records (i.e., those not already associated with the record) from all provider(s) identified. If any records sought are unavailable, the reason for their unavailability must be noted in the record. If a private provider does not respond to the AOJ's request for identified records sought, the Veteran must be so notified, and reminded that ultimately it is his responsibility to ensure that private treatment records are received. 

The AOJ should specifically secure for the record complete clinical records of all VA evaluations and/or treatment the Veteran has received for his respiratory conditions since July 2013, the date of the most recent clinical record in the file. 

2. Thereafter, the AOJ should arrange for the Veteran to be examined by pulmonologist to determine the nature and likely etiology of any diagnosed respiratory disability. The record (including this remand, the May 2011 private clinical record, the August 2013 respiratory examination report, and the August 2014 addendum opinion) must be reviewed by the examiner in conjunction with the examination. 

 For purposes of this remand, it is presumed that the Veteran had in-service asbestos exposure during his period of active military service while completing his military occupational specialty of pipe fitter's apprentice. He is also shown to have a history of smoking approximately one pack of cigarettes per day for approximately 25 to 30 years.

Based on examination of the Veteran and review of his record, the examiner should provide opinions that respond to the following:

(a) Please identify (by diagnosis) each respiratory disability entity found.

(b) Please identify the likely etiology of each respiratory entity diagnosed. Specifically, is it at least as likely as not (a 50% or greater probability) that any such disability is related to the Veteran's service?

The examiner must explain the rationale for all opinions in detail, citing to supporting factual data and/or medical literature, as deemed appropriate. The examiner is asked to reconcile the findings on examination with the impressions noted in the May 2011 private clinical treatment record and the August 2013 VA (fee basis) respiratory conditions examination report, as noted above. The examiner is also asked to comment on the significance of a November 1959 STR which noted questionable early pleurisy as well as the journal articles pertaining to asthma, COPD, occupational lung diseases, nonmalignant diseases related to asbestos, and areas of asbestos exposure risk on U.S. Naval ships submitted by the Veteran in June 2013, December 2015, and February 2016. 

3. The RO should then review the record and readjudicate the remaining claims. If any remains denied, the RO should issue an appropriate supplemental statement of the case, afford the Veteran and his agent opportunity to respond, and return the case to the Board.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
VICTORIA MOSHIASHWILI 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs