Citation Nr: 1722228 
Decision Date: 06/15/17 Archive Date: 06/29/17

DOCKET NO. 08-35 744 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Honolulu, Hawaii


THE ISSUES

1. Entitlement to service connection for posttraumatic stress disorder (PTSD).

2. Entitlement to service connection for an acquired psychiatric condition, other than PTSD.

3. Entitlement to service connection for left knee disability.

4. Entitlement to service connection for left Achilles tendonitis. 


WITNESS AT HEARING ON APPEAL

Appellant



ATTORNEY FOR THE BOARD

N. Rippel, Counsel


INTRODUCTION

The Veteran served on active duty from April 1986 to September 1988. He had subsequent Reserve service that ended in January 1994.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from March 2007 and November 2007 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in San Diego, California, which denied the benefits sought on appeal. Jurisdiction is with the Honolulu, Hawaii RO.

A Board hearing was held on September 18, 2012, at the RO in Honolulu, Hawaii, before the undersigned Veterans Law Judge.

In March 2013, the Board issued a decision declining to reopen a claim of entitlement to service connection for a personality disorder and remanding the claims of service connection for PTSD; an acquired psychiatric condition other than PTSD; service connection for a bilateral knee disability; and service connection for a left Achilles tendonitis to the Agency of Original Jurisdiction (AOJ) for additional development. As sufficient efforts were made to obtain the noted medical records, he was sent additional information about alternative sources of evidence and the requested medical opinions were obtained, the Board finds the directives have been substantially complied with, and the matter again is before the Board. Stegall v. West, 11 Vet. App. 268, 271 (1998). As service connection for patellofemoral pain syndrome, right knee, was granted in a September 2016 rating decision, only service connection for the left knee remains on appeal. 

While the Veteran appointed an accredited veterans service organization via a VA Form 21-22 in January 2017, and that representative submitted argument on his behalf in April 2017, he revoked that representation in a written statement received at VA April 24, 2017, and is thus currently unrepresented before VA. 


FINDINGS OF FACT

1. The Veteran's only current psychiatric diagnosis, at all times relevant to the claim, is a personality disorder; the Veteran does not have PTSD.

2. Left knee disability was not manifest during service or within one year of separation from service, and is not otherwise related to service. 

3. Left knee disability is not caused or aggravated by service-connected disease or injury.

4. Left Achilles tendonitis was not manifest during service or within one year of separation from service, and is not otherwise related to service. 

5. Left Achilles tendonitis is not caused or aggravated by service-connected disease or injury. 


CONCLUSIONS OF LAW

1. PTSD was not incurred in or aggravated during service, nor is it proximately due to, the result of, or aggravated by service connected disease or injury. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304(f), 3.310 (2016).

2. An acquired psychiatric disorder was not incurred in or aggravated during service, is not proximately due to, the result of, or aggravated by service connected disease or injury. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.310 (2016).

3. Left knee disability was not incurred in or aggravated during service and is not proximately due to, the result of, or aggravated by service connected disease or injury. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.310 (2016).

4. Left Achilles tendonitis was not incurred in or aggravated during service, nor is it proximately due to, the result of, or aggravated by service connected disease or injury. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.310 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). 

VA's duty to notify was satisfied by a November 2006 letter. See 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). 

The Board concludes that VA's duty to assist has been satisfied. The AOJ has obtained the available service treatment records and outpatient treatment records, to include those from VA and identified non-VA sources including prison records. Records from the Social Security Administration have been obtained. VA examinations have been conducted in 2016 in connection with the claims on appeal, reports of which are of record and appear adequate. The opinions expressed therein are predicated on a substantial review of the record and consideration of the Veteran's complaints and symptoms. The Veteran has not identified, and the record does not otherwise indicate, any existing pertinent evidence that has not been obtained.

During the hearing the Veterans Law Judge clarified the issues, explained the concept of service connection, and helped to identify any pertinent evidence that was outstanding that might substantiate the claims. The case was thereafter remanded for additional development, including examinations. The actions of the Veterans Law Judge supplement VA's duties and comply with 38 C.F.R. § 3.103.

Given these facts, it appears that all available records have been obtained. There is no further assistance that would be reasonably likely to assist the Veteran in substantiating the claims. 38 U.S.C.A. § 5103A (a)(2).

II. Analysis

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303 (a). Establishing service connection generally requires competent evidence of three things: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and, (3) a causal relationship, i.e., a nexus, between the claimed in-service disease or injury and the current disability. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303 (a). The requirement that a current disability exist is satisfied if the claimant had a disability at the time his claim for VA disability compensation was filed or during the pendency of the claim. McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). 

Service connection may also be granted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d).

In addition, for veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, including arthritis and psychoses, are presumed to have been incurred in service if they manifested to a compensable degree within one year of separation from service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1131, 1137; 38 C.F.R. §§ 3.307 (a), 3.309(a). 

With chronic disease shown as such in service so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent cause. 38 C.F.R. § 3.303 (b). Continuity of symptomatology after discharge is required where the condition noted during service is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. 38 C.F.R. § 3.303 (b); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc). When service connection is established for a secondary condition, the secondary condition shall be considered a part of the original condition. 38 C.F.R. § 3.310 (a).

Section 3.310 was amended effective October 10, 2006, during the course of the Veteran's appeal. That amendment imposed additional burdens on a claimant seeking to demonstrate that a service-connected condition aggravated a condition for which service connection had not yet been established. The appropriate version of § 3.310 in the instant case is that version effective when the Veteran filed his claims in August and September 2006, as it is potentially more favorable to the Veteran than the current version.

VA is required to give due consideration to all pertinent medical and lay evidence in evaluating a claim for disability benefits. 38 U.S.C.A. § 1154 (a). Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). 

When assessing the probative value of a medical opinion, the thoroughness and detail of the opinion must be considered. The opinion is considered probative if it is definitive and supported by detailed rationale. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000). A medical opinion that contains only data and conclusions is not entitled to any weight. "It is the factually accurate, fully articulated, sound reasoning for the conclusion, not the mere fact that the claims file was reviewed, that contributes probative value to a medical opinion." See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008).

Lay evidence cannot be determined to be not credible merely because it is unaccompanied by contemporaneous medical evidence. Buchanan v. Nicholson, 451 F.3d 1331, 1336-37 (Fed. Cir. 2006). However, the lack of contemporaneous medical evidence can be considered and weighed against a Veteran's lay statements. Id. Further, a negative inference may be drawn from the absence of complaints or treatment for an extended period. Maxson v. West, 12 Vet. App. 453, 459 (1999), aff'd sub nom. Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000).

The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show. The Veteran should not assume that the Board has overlooked pieces of evidence that are not specifically discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000). The law requires only that the Board provide reasons for rejecting evidence favorable to the Veteran.

The Veteran contends that the conditions on appeal are due to service. A primary argument is that they are proximately due to his service-connected left leg bayonet stab wound residual scar. This stab wound occurred at Fort Benning when a buddy's bayonet accidentally went into his left leg. 

 A. PTSD and psychiatric disorders

The Veteran urges that he has PTSD due to personal assault by a superior in service, and depression due to his service-connected left leg bayonet stab wound residual scar. While the Veteran is competent to report symptoms, as that is a lay-observable symptom, he is not competent to diagnose himself with a psychiatric disorder, as to do so requires medical expertise. Jandreau, 492 F.3d 1372.

In statements and testimony, the Veteran urges that he was sexually assaulted during service by his squad leader on three occasions when he was with the 3rd Ranger Battalion. He indicated that he requested to be transferred. In December 2006, the Veteran indicated that the sexual assault occurred between September 1986 and November 1986 at Fort Benning. The Veteran stated that although he was diagnosed with a multiple personality disorder during service, the nomenclature changed and turned into dissociated anxiety or PTSD. He indicated that more recently he has been diagnosed with depression.

The service treatment records show that in June 1988 the Veteran was hospitalized in Wiesbaden, Germany for adjustment disorder with depressed mood, episodic alcohol abuse, and mixed personality disorder with narcissistic and passive-aggressive traits. A mental status evaluation in July 1988 noted personality disorder and misconduct and the examiner recommended discharge. On the report of medical history in July 1988, the Veteran indicated that he had nervous trouble and excessive worry. On the examination in July 1988 stress and nervousness was indicated, but the clinical psychiatric evaluation was normal, as it had been at enlistment in January 1986. An entry on August 10, 1988, continued to show adjustment disorder with depressed mood, alcohol abuse, and mixed personality disorder. On August 12, 1988, it was noted that the adjustment disorder was resolving. 

Personnel records include a military police report in May 1988, which shows that the Veteran was charged with resisting apprehension by German police, destruction of property, assault, and disorderly conduct. In July 1988 he was charged with damage to private property. In August 1988 the records show that the Veteran was notified that the basis of separation was contemplated for unsatisfactory performance. His DD 214 under honorable conditions notes unsatisfactory performance. 

Private medical records show the Veteran was hospitalized from August 1993 to September 1993. His discharge diagnoses included adjustment disorder with suicidal threats. Records from the Tripler Army Medical Center from September 1993 to November 1993 show diagnosis of depression. Private medical records show that in September 2002 the Veteran was treated for depression and in May 2004 for bipolar disorder. A letter from a VA registered nurse shows that the Veteran was being treated for major depression and PTSD. VA records in January 2007, show a diagnosis of bipolar disorder, PTSD to rule out alcohol dependence in sustained remission with psychotic features, and anxiety. In February 2007 there was an assessment of depression. In October 2006 there was an assessment of mood disorder and major depressive disorder. In May 2007 psychosis was noted. 

VA treatment records in 2009 show the Veteran was treated for mood disorder and PTSD. Records from Tripler Medical Center in December 2009 show that the Veteran reported having a dissociative disorder. VA records in 2011 and 2012 continue to document a mood disorder.

Based on this history, the Board decided in March 2013 to deny the application to reopen the claim of service connection for personality disorder, because there was no new and material evidence as it was established for some time that a personality disorder had been in existence, and to remand the claims of service connection for PTSD and other psychiatric disorders for examination to determine the current diagnoses and whether it was due to service.

The Veteran was afforded a VA mental health examination in June 2016 by a psychologist who reviewed the record and conducted an hour-long interview of the Veteran. The report includes a detailed recitation of the Veteran's history that is consistent with the record. The Veteran's pre-military, military, and post military history as to all aspects of his life was recorded, in addition to findings as to his present state. The psychologist concluded that the Veteran does not have a diagnosis of PTSD under either DSM IV or DSM V due to a lack of PTSD symptoms. The diagnosis was instead Unspecified Personality Disorder. The examiner found that there were no other psychiatric diagnoses. The examiner accepted in-service stressor of personal assault/military sexual trauma (MST). 

The examiner stated the following:

The veteran manifests a pervasive pattern of interpersonal instability throughout his life as evidenced by problematic relationships with his parents who he reported tried to have him declared incompetent so they could take his money. He threatened his father and was arrested. The veteran's interpersonal relationship with other people has also been in turmoil his entire life resulting in altercations and legal problems. This is not in any way caused by military service or the reported MST. This is a behavior pattern that is consistent with a Personality Disorder and Personality Disorders originate in childhood and cannot be caused by service. Although the veteran reported exposure to MST, MST did not and cannot cause a personality disorder.

Thus, while accepting the Veteran's reports of MST in service, the examiner concluded that the Veteran does not meet criteria for a psychiatric disorder caused by an in-service personal assault, but instead meets criteria for Unspecified Personality Disorder which cannot be caused by or exacerbated by military service. 

The above review reveals no PTSD or other psychiatric disorder, except for a personality disorder, in service, and no psychoses within the first post-service year. 

Moreover, the Veteran currently is only diagnosed personality disorder. As noted, the Board declined to reopen a claim of service connection for personality disorder in the March 2013 Board decision, and in fact, personality disorders are not diseases or injuries within the meaning of applicable legislation. 38 C.F.R. §§ 3.303(c), 4.9 (2016). 

The Board finds the 2016 VA examination report to be the most probative evidence as to psychiatric diagnosis at all times relevant to the claim; the opinion is factually accurate, fully articulated and includes sound reasoning for the conclusions. See Nieves-Rodriguez v. Peake, 22 Vet. App. at 304. This neutral examiner considered all of the prior evidence of record in arriving at the conclusion that this is the only diagnosis. For these reasons, the Board accords controlling weight to the 2016 VA opinion that the only psychiatric disability present is a personality disorder. 

The Board acknowledges that lay assertions may serve to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. See 38 U.S.C.A. § 1153 (a); 38 C.F.R. § 3.303 (a); Jandreau v. Nicholson, 492 F. 3d 1372 (2007); see also Buchanan v. Nicholson, 451 F. 3d 1331 (Fed. Cir. 2006). A layman is competent to report what he or she experiences through one of the senses. See Layno v. Brown, 6 Vet. App 465, 470 (1994). However, the etiology of psychiatric disorders is a complex medical matter beyond the expertise of a layperson. Jandreau v. Nicholson, 492 F. 3d 1372 (2007). In this instance, no individual with appropriate expertise has reviewed the entirety of the record and linked a current psychiatric disorder for which service connection may be granted to any in-service event or the residuals of the bayonet wound. The well-supported, uncontroverted opinion of the 2016 VA examiner is that the there is no psychiatric condition for which service connection may be granted. The evidence falls short of suggesting a nexus between any current psychiatric disorder and an in-service event or the service-connected bayonet wound. 

In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C.A. § 5107 (b); 38 C.F.R. § 3.102. 

 B. Left Knee Disability and Left Achilles Tendon Disorder

Here, there is current disability in the form of left knee patellofemoral pain syndrome and left Achilles tendonitis. See May 2016 VA examination reports. The critical question is whether there is a relationship between the present disabilities and the service-connected bayonet wound or service. For the following reasons, the Board finds that the preponderance of the evidence is against a finding of such a causal relationship. 

In statements and testimony the Veteran reported that he injured his knees during service due to serving with the ranger battalion. He testified that he had about 20 to 30 parachute jumps. He indicated that he developed swollen knees that were wrapped by the field medic and was given Ibuprofen. The Veteran also stated that on multiple occasions he struck his knees on the back of an M113 Armored Personnel Carrier during night time maneuvers in the field. He indicated that he went to sick call on multiple occasions and has had problems with his knees since service. The Veteran's DD 214 Form shows that he was an infantryman and was awarded a parachutist badge. He had basic airborne training and went through a ranger indoctrination program. 

In November 2006, the Veteran also stated that he injured his knees when he was pushed off an aircraft. 

As noted, the Veteran is service connected for a residual scar on the left leg due to a bayonet stab wound that he incurred when he and a buddy tripped and fell during service at Fort Benning. He testified that they left packing material inside his wound that has caused tendonitis of the left Achilles tendon. He is also recently service-connected for right knee patellofemoral pain syndrome. 

Service treatment records show that in July 1987 during a bayonet course the Veteran was stabbed in the ankle. In November 1987 he was treated for a tender subpatella of the right knee with complaints of burning sensation and numbness. On the report of medical history in July 1988, the Veteran stated that his right knee hurt with exercise and indicated that he had foot trouble. The July 1988 examination includes a normal clinical evaluation of the lower extremities and feet. 

Private medical records from 2002 to 2005 show the Veteran had knee pain. On VA examination in November 2006, x-rays of the left knee were normal. The pertinent diagnosis was left knee pain secondary to patellofemoral pain syndrome and chondromalacia. In January 2010, x-rays from the Tripler Army Medical Center show osteoarthritis of the knees and left Achilles tendon tendonitis versus tenosynovitis, chronic. A VA treatment record in November 2000 shows likely tendonitis of the left heel. Private medical records in May 2003 and July 2005 show tendinitis of the left ankle.

Based on this history, the Board remanded these claims for examination to determine the current diagnoses and whether they are due to service.

The Veteran was afforded VA Knee and Lower Leg Conditions and Ankle Conditions examination in May 2016 by one VA physician who reviewed the record and conducted an interview of the Veteran. The reports each include a detailed recitation of the Veteran's history that is consistent with the record, in addition to findings as to the present state of his lower extremities. It was noted that the physician reviewed imaging studies and noted that they documented no degenerative or traumatic arthritis. The diagnoses included bilateral patellofemoral pain syndrome and left Achilles tendonitis. 

The examiner opined that the Veteran's bilateral knees and left Achilles were not at least as likely as not (50 percent or greater probability) proximately due to or the result of residual scar, left distal leg, status post stab wound. He explained that medical literature shows that patellofemoral syndrome seemingly originates from the contact of the posterior surface of the patella with the femur and is caused by increased levels of physical activity, malalignment of the patella as it moves through the femoral groove, quadriceps muscle imbalance and tight anatomical structures, e.g. retinaculum or iliotibial band. In addition, there is no causal relationship of a residual superficial scar causing any knee condition. 

The examiner also opined that the Veteran's bilateral knees and left Achilles were not at least as likely as not (50 percent or greater probability) related to service. In addition to the above explanation as to the origination of patellofemoral pain syndrome, he added that there were no complaints or evaluations for left knee pain until 2005, well past service. 

Specifically with regard to the left Achilles tendonitis, the examiner stated that there is no evidence that his stab wound suffered in 1987 has any connection to his left Achilles condition, first consistently noted in 2000. Therefore, his left Achilles tendinitis is less likely as not proximately caused by or a result of the residual scar, left distal leg, status post stab wound. He noted that medical literature reflects that Achilles tendonitis is generally caused by overuse of the affected limb and is more common among athletes training under less than ideal conditions; that the development of tendinitis depends on the type, frequency and severity of exercise or use, is a common injury, particularly in sports that involve lunging and jumping; that tightness in the calf muscles has also been known to be involved in the onset of Achilles tendinitis, excessive pronation of the foot in the subtalar joint is a type of mechanical mechanism that can lead to tendinitis, can occur as an overuse injury which refers to repeated stress and strain, and the use of improper or worn-down footwear, which lack the necessary support to maintain the foot in the natural/normal pronation. He observed that the Veteran claims that, "the bayonet penetrated his ankle and embedded in or near the heel, however, an exam conducted on 7/28/87 noted a 1 1/2cm laceration which is inconsistent with the reported history as a bayonet is much wider than 1 1/2cm. After review and examination, there is no evidence that his stab wound suffered in 1987 has any connection to his left Achilles condition, therefore, his left Achilles tendinitis is less likely as not proximately caused by or a result of the residual scar, left distal leg, status post stab wound." Based on the above facts, the examiner also explained that left Achilles tendinitis, first consistently noted in 2000, is less likely as not caused by or a result of the claimed inservice injury, event or illness.

As noted, the records contain no medical opinions linking the Veteran's current left knee or left Achilles conditions to his service-connected residual scar, left distal leg, status post stab wound, or to active duty service to include any incidents reported by the Veteran. Service treatment records definitively do not indicate either disability, and no chronic left knee or left Achilles disability was noted for several years following service. (Arthritis has not been diagnosed, as definitively found in the May 2016 examination report.) Rather, at separation the lower extremities and feet were normal. In addition, he denied a pertinent history. Furthermore, the May 2016 VA examining physician has opined against a relationship between the current disabilities and service or service-connected residual scar, left distal leg, status post stab wound. Based on the competent and credible lay and medical evidence of record, the Board finds that the preponderance of the evidence is against a finding that either the left knee disability or left Achilles tendonitis is causally related to his active duty service. 

In making this decision, the Board has fully considered the lay assertions of record. A layperson is competent to report on the onset and continuity of his current symptomatology. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (noting that a Veteran is competent to report on that of which he or she has personal knowledge). However, his opinion as to the etiology of his current left knee or Achilles tendon disability is outweighed by the medical opinion evidence, namely the May 2016 VA opinion discussed above. In this regard, the examiner considered the reported history in arriving at the opinion, as well as the contemporaneous records and service treatment records. The Board does, in fact, adopt the May 2016 opinions to determination that service connection for neither disability is warranted. 

To the extent that the Veteran reported any in-service and continuing history of left knee and left Achilles symptoms, such report is not credible. Such statements are inconsistent with the normal separation examination. In addition, such statements are inconsistent with his specific denial of a history of left knee or Achilles symptoms at separation. 

Although the Veteran has established a current disability and an in-service injury, event or disease, as well as service-connected disability of bayonet wound of the left leg, the preponderance of the evidence is against a finding that either the left knee disability, patellofemoral pain syndrome, or left Achilles tendonitis is causally related to his service or proximately due to the bayonet wound. Since the preponderance of the evidence is against the claims, the benefit of the doubt rule is not applicable. See 38 U.S.C.A. § 5107 (b); Ortiz, 274 F.3d at 1364; Gilbert, 1 Vet. App. at 55-57; 38 C.F.R. § 3.102. For these reasons, the claims are denied.



ORDER

Service connection for PTSD is denied.

An acquired psychiatric disorder, other than PTSD is denied.

Service connection for left knee disability is denied.

Service connection for left Achilles tendonitis is denied. 




____________________________________________
H. N. SCHWARTZ
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs