Citation Nr: 1808269 
Decision Date: 02/08/18 Archive Date: 02/20/18

DOCKET NO. 10-45 016 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico


THE ISSUES

1. Entitlement to service connection for radiculopathy of the right lower extremity.

2. Entitlement to service connection for radiculopathy of the left lower extremity.

3. Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD), as secondary to the service-connected disease or injury.

4. Entitlement to a total rating for compensation on the basis of individual unemployability (TDIU).


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

B. Bodi, Associate Counsel


INTRODUCTION

The Veteran served on active duty from February 1980 to February 1984 and from January 1991 to June 1991. The Veteran had service in Southwest Asia from February 1991 to April 1991. 

This matter is before the Board of Veterans Appeals (Board) on appeal from an August 2009 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in San Juan, the Commonwealth of Puerto Rico. 

In May 2014, the Board remanded this matter so that the Veteran could testify before the undersigned Veterans Law Judge (VLJ) during a video conference hearing, which he did in August 2014. In November 2014, the Board remanded the case for additional development. 

The United States Court of Appeals for Veterans Claims (Court) has held that in the context of a claim for service connection for a psychiatric disorder, a claim for service connection encompasses all pertinent symptomatology, regardless of how that symptomatology is diagnosed. Clemons v. Shinseki, 23 Vet. App. 1 (2009). In light of Clemons, in addition to entitlement to service connection for PTSD, the issue was expanded to broadly include entitlement to service connection for an acquired psychiatric disorder.

In April 2017, the Board remanded the issues for further development. The remand required the RO to take appropriate steps to request any updated VA treatment records and to afford the Veteran a VA examination to determine whether the Veteran's claimed depression is related to service. In compliance with the remand directives, VA treatment records were associated with the claims file and a VA examination was obtained. The directives having been substantially complied with, the matter again is before the Board. D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Stegall v. West, 11 Vet. App. 268, 271 (1998). 

The April 2017 decision and remand also determined that the issue of service connection for lower back disability had been raised by a September 2014 statement from the representative, but had not been adjudicated by the AOJ. The Board referred it to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2017). 



FINDINGS OF FACT

1. Radiculopathy of the right lower extremity was not manifest in service or 
within one year of separation. Radiculopathy is not attributable to service.

2. Radiculopathy of the left lower extremity was not manifest in service or 
within one year of separation. Radiculopathy is not attributable to service.

3. An acquired psychiatric disorder, to include posttraumatic stress disorder 
(PTSD) was not manifest in service. An acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD) is not attributable to service. 

4. The Veteran is not service connected for any disability.

5. An acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD) was not caused or aggravated by service-connected disease or injury.

6. Depressive disorder was not manifest in service. Depressive disorder is not 
attributable to service. Depressive disorder was not caused or aggravated by service-connected disease or injury.

7. The Veteran has no service connected disabilities. Service connected disability 
does not preclude him from securing or following substantially gainful employment. 



CONCLUSIONS OF LAW

1. Radiculopathy of the right lower extremity was not incurred in or aggravated
by service, and organic disease of the nervous system may not be presumed to have been incurred therein. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1131, 1137, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2017).

2. Radiculopathy of the left lower extremity was not incurred in or aggravated 
by service, and organic disease of the nervous system may not be presumed to have been incurred therein, 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1131, 1137, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2017).

3. An acquired psychiatric disorder, to include posttraumatic stress disorder 
(PTSD) was not incurred in or aggravated by service, and is not proximately due to, the result of, or aggravated by service-connected disease or injury. 38 U.S.C. §§ 1110, 1131, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.310 (2017).

4. The criteria for a TDIU are not met. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.340, 3.341, 4.16 (2017).



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2017). 

The Veteran has not raised any issues with the duty to notify or duty to assist. See Scott v McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to duty to assist argument).


II. Service Connection

To establish service connection a Veteran must generally show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service." Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d).

Service connection may also be established for organic disease of the nervous system manifesting to a compensable degree within one year of separation from service. 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. 3.307, 3.309(a). 

For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "Chronic." When the disease identity is established (leprosy, tuberculosis, multiple sclerosis, etc.), there is no requirement of evidentiary showing of continuity. Continuity of symptomatology is required only where the condition noted during service (or in the presumptive period) is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. When the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support the claim. 38 C.F.R. § 3.303 (b). 

Except as provided in § 3.300(c), disability which is proximately due to or the result of a service-connected disease or injury shall be service connected. When service connection is thus established for a secondary condition, the secondary condition shall be considered a part of the original condition. 38 C.F.R. § 3.310 (a). Any increase in severity of a nonservice-connected disease or injury that is proximately due to or the result of a service-connected disease or injury, and not due to the natural progress of the nonservice-connected disease, will be service connected. However, VA will not concede that a nonservice-connected disease or injury was aggravated by a service-connected disease or injury unless the baseline level of severity of the nonservice-connected disease or injury is established by medical evidence created before the onset of aggravation or by the earliest medical evidence created at any time between the onset of aggravation and the receipt of medical evidence establishing the current level of severity of the nonservice-connected disease or injury. 38 C.F.R. § 3.310 (b).

Satisfactory lay evidence that an injury was incurred in combat will be accepted as sufficient proof of service connection if the evidence is consistent with the circumstances, conditions, or hardships of such service, even though there is no official record of such incurrence. 38 U.S.C. § 1154 (b) (2012); 38 C.F.R. 
 § 3.304 (d) (2016).

The ordinary meaning of the phrase "engaged in combat with the enemy," as used in 38 U.S.C. § 1154 (b), requires that a Veteran have participated in events constituting an actual fight or encounter with a military foe or hostile unit or instrumentality. The issue of whether any particular set of circumstances constitutes engagement in combat with the enemy for purposes of section 1154(b) must be resolved on a case by case basis. See VAOPGCPREC 12- 99 (October 18, 1999).

There are particular requirements for establishing service connection for PTSD in 38 C.F.R. § 3.304 (f) that are separate from those for establishing service connection generally. Arzio v. Shinseki, 602 F.3d 1343, 1347 (Fed. Cir. 2010). Service connection for PTSD requires medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125 (a); a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred. 38 C.F.R. § 3.304 (f) and 38 C.F.R. § 4.125 (requiring PTSD diagnoses to conform to the DSM-IV/V). 

Effective July 13, 2010, 38 C.F.R. § 3.304 (f) was amended to reduce the evidentiary burden of establishing a stressor when it is related to a fear of hostile military or terrorist activity. See 75 Fed. Reg. 39843-01 (July 13, 2010), codified at 38 C.F.R. § 3.304 (f)(3). The amendment provides that, if a stressor claimed by a Veteran is related to the Veteran's fear of hostile military activity, and a VA psychiatrist or psychologist confirms that the claimed stressor is adequate to support a diagnosis of PTSD, a veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor, as long as the claimed stressor is consistent with the places, types, and circumstances of the Veteran's service and there is no clear and convincing evidence to the contrary. Id. "Fear of hostile military activity" is defined to mean that a veteran experienced, witnessed, or was confronted with an event or circumstance that involved actual or threatened death or serious injury, or a threat to the physical integrity of the veteran or others, and the Veteran's response to the event or circumstance involved a psychological or psycho-physiological state of fear, helplessness, or horror. Id. The list of examples of such an event or circumstance specifically includes attack upon friendly military aircraft, vehicle-imbedded explosive devices, and incoming artillery, rocket, or mortar fire.

VA is required to give due consideration to all pertinent medical and lay evidence in evaluating a claim for disability benefits. 38 U.S.C. § 1154 (a). Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). 

Lay evidence cannot be determined not credible merely because it is unaccompanied by contemporaneous medical evidence. Buchanan v. Nicholson, 451 F.3d 1331, 1336-37 (Fed. Cir. 2006). However, the lack of contemporaneous medical evidence can be considered and weighed against a Veteran's lay statements. Id. The Board, as fact finder, is obligated to, and fully justified in, determining whether lay evidence is credible in and of itself, i.e., because of possible bias, conflicting statements, etc. Id. Further, a negative inference may be drawn from the absence of complaints for an extended period. See Maxson v. West, 12 Vet. App. 453, 459 (1999), aff'd sub nom. Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000).


III. Radiculopathy of the Right and Left Lower Extremities

In a January 1980 Report of Medical History the Veteran denied recurrent back pain. In a June 1985 Report of Medical History, the Veteran denied recurrent back pain. An October 1987 Report of Medical Examination shows that the neurologic system and lower extremities were normal. In a related October 1987 Report of Medical History, the Veteran wrote "I am in good health." He denied recurrent back pain. An April 1991 STR shows the Veteran reported pain in his back and stomach. A June 1991 Chronological Record of Medical Care shows a notation of low back pain. In a June 1991 Report of Medical History, the Veteran endorsed recurrent back pain, but denied neuritis and paralysis. His June 1991 Report of medical Examination was clinically normal for the lower extremities and neurologic system. A June 1996 Report of Medical Examination was clinically normal for the neurologic system and lower extremities. A June 1996 Report of Medical History shows that the Veteran complained of recurrent back pain. He denied neuritis and paralysis. 

An April 1998 Radiology Diagnostic Report shows impressions of mild central and upper bilateral recesses stenosis due to a combination of a mild posterior centric bulging disc. The Veteran reported chronic low back pain and numbness sensation at lateral aspects of the right side. An MRI revealed decreased signal intensity at the L5-S1 disc space. 

A September 1999 VA treatment record shows the Veteran presented with paresthesia of the left leg. A VA treatment record from January 2000 shows complaints of right lower extremity paresthesia.

An August 2001 Report of Medical history shows a notation of back pain. A March 2002 treatment record reads that the Veteran could not perform his PT test, and had to be reclassified. A January 2005 Report of Medical Examination was clinically normal for the neurologic system and lower extremities.

A private treatment record from Instituto de Salud Familiar from Dr. W. M. received in July 2001 reads that the Veteran has been treated at the clinic since 1992 for low back pain with radiculopathy. It states that an MRI has been done revealing Discogenic Disc Disease of lumbosacral spine.

A VA treatment record from 2002 shows that the Veteran presented with chronic low back and neuropathic pain.

A May 2004 VA treatment record shows that the Veteran presented with a history of DDD in 1998. The treatment record shows that the Veteran presented with frequent episodes of leg numbness pain and occasional weakness. There were impressions of mild discogenic disease in the lower lumbar spine. 

A May 2005 VA examination showed posterior rami irritability without evidence of acute or chronic radiculopathy.

Additional VA treatment records are substantially the same and show degenerative changes of the lumbar spine with anterior osteophytes. 

The Veteran is competent to relate what he has been told by a professional. He is also competent to report that he has been told that he has degenerative disc disease and radiculopathy. The Veteran is also competent to report his symptoms and observations of pain in the lower back and lower extremities. Jandreau v. Nicholson, 492 F. 3d 1372 (2007); see also Buchanan v. Nicholson, 451 F. 3d 1331 (Fed. Cir. 2006). 

The Veteran has appealed the denial of service connection for radiculopathy. Here, the most probative evidence is the STRs indicating that the Veteran did not have radiculopathy of the lower extremities or related characteristic manifestations in service. An October 1987 Report of Medical Examination shows the Veteran was clinically normal for the neurologic system and lower extremities. In his June 1991 Report of Medical history, the Veteran denied neuritis and paralysis. While he endorsed low back pain, he did not endorse pain in the lower extremities. A June 1996 Report of Medical Examination was clinically normal for the neurologic system and lower extremities. The Board finds this to be highly probative. 

The STRs, VA treatment records, and private treatment records all indicate that the Veteran's radiculopathy was not manifest in service or within one year of separation. Rather, when tested, the neurologic system and lower extremities were normal. He did not have characteristic manifestations sufficient to identify radiculopathy. We again note that the contemporaneous service records were normal. The most probative evidence shows that radiculopathy was not noted, manifest, or diagnosed during service or within one year of separation. 

The contemporary medical evidence establishes a remote onset of pathology and the Veteran's own opinion warrants less probative value (regarding identifying a potential chronic disease entity) when compared with the objective evidence of record. Despite a brief period of in-service complaints of low back pain, the evidence establishes that he did not have an organic disease of the nervous system during service, and there is no evidence of an organic disease of the nervous system within one year of separation. In sum, the evidence shows that the Veteran did not have radiculopathy of the lower extremities in service, and an organic disease of the nervous system did not manifest for several years after discharge. The preponderance of the evidence is against the claim and there is no doubt to be resolved. Consequently, service connection for radiculopathy of the lower extremities disability is not warranted.


IV. Acquired Psychiatric Disorder, to include PTSD, and Depressive Disorder
 
In a January 1980 Report of Medical History, the Veteran denied nervous trouble of any sort. In a June 1985 Report of Medical History, the Veteran denied nervous trouble of any sort, depression or excessive worry, and frequent trouble sleeping. An October 1987 Report of Medical Examination shows the Veteran was clinically normal for the psychiatric evaluation. He denied nervous trouble of any sort. A June 1991 Chronological Record of Medical Care shows a notation that the Veteran complained of depression. In a June 1991 Report of Medical History, the Veteran endorsed nervous trouble of any sort, as well as depression and excessive worry. His June 1991 Report of Medical Examination was clinically normal for the psychiatric evaluation. A June 1996 Report of Medical Examination was clinically normal for the psychiatric evaluation. It shows notations of the Veteran complaining about depression. A June 1996 Report of Medical History shows that the Veteran complained of nervous trouble, frequent trouble sleeping, and depression or excessive worry. 

VA treatment records show that the Veteran first began psychiatric treatment in the San Juan VA Health Care System starting in May 2001. He described experiencing frequent intrusive conflicting thoughts that do not allow him to function during the day. He reported hearing noises at nighttime but had no delusions, no ideas of harm ideas to self or others at this time, and his cognitive functions were reasonably preserved. 

An August 2001 Report of Medical history shows the Veteran denied depression or excessive worry and attempted suicide. He noted that he received counseling and had frequent trouble sleeping. He endorsed nervous trouble of any sort (anxiety or panic attacks). A January 2005 Report of Medical Examination was clinically normal for the psychiatric evaluation.

A June 2005 VA examination found that the Veteran had some mild depressive symptoms and some difficulty with social and occupational functioning, but was generally functioning pretty well with some meaningful interpersonal relationships. His psychiatric symptoms were not interfering with his industrial capacity and therefore he was not unemployable from the psychiatric point of view. Depressive disorder not otherwise specified (NOS) was identified.

The Veteran's undated Statement in Support of Claim for PTSD, received on October 11, 2005, indicates that he served in the Persian Gulf War. He reported he was under continual bombardment sirens, noises of bombardments, and cadavers strewn everywhere. He had constant nightmares and depression up to the present day for which he continued to take medication for the depression and insomnia. 

A subsequent similar statement from February 2008 shows that the Veteran was responsible for transporting supplies to the Kuwaiti/Iraqi border. The Iraqis were destroying everything they found. They were under constant attack. People were dead. They had to navigate between the dead.

An August 2014 private medical opinion identified major depressive disorder. The doctor indicated that "According to history, patient['s] illness is direct consequence of the military service."

The Veteran was afforded a February 2015 VA examination. The Veteran reported that his MOS was Infantry. The Veteran reported that he had combat experience in Desert Storm/Desert Shield. He reported that there had been many attacks to the base. He saw many dead and wounded soldiers. The VA examiner identified depressive disorder NOS. The VA examiner indicated that the Veteran meets the DSM V stressor criteria for PTSD. Nonetheless, the VA examiner found that he does not fulfill the criteria for the intrusion symptoms associated with the traumatic event; the criteria for the avoidance of the stimulus associated with the traumatic event; the criteria for the negative alterations in cognitions and mood associated with the traumatic event nor the criteria of the marked alterations in arousal and reactivity associated with the traumatic event. The VA examiner therefore opined that the Veteran does not fulfill the diagnostic criteria for PTSD according to the DSM V. He opined that the claimed condition claimed was less likely than not (less than 50 percent probability) incurred in or caused by the claimed in-service injury, event or illness. The VA examiner reasoned that the Veteran sought psychiatric care in 2001, ten years after his military discharge, and the events that led to his military stressors. The VA examiner concluded that a temporal relationship between the neuropsychiatric disorder and the Veteran's military service is not established.

The Veteran was subsequently afforded a May 2017 VA psychiatric examination with medical opinion. Upon clinical examination, the VA examiner identified major depressive disorder, recurrent, moderate with symptoms of depressed mood, anxiety, sleep impairment, flattened affect, and disturbance of motivation and mood. The VA examiner opined that the Veteran's diagnosed major depressive disorder, recurrent, moderate, has no nexus to his military service in Southwest Asia from February, 1991 to April, 1991, as he began psychiatric treatment in 2001, 10 years post-military service. The VA examiner noted that the Veteran had no service connected disabilities. The VA examiner therefore opined that the claimed condition is not related to military service nor is the claimed condition aggravated by any service connected disabilities. The VA examiner also noted that after a review of the objective medical evidence no "characteristic manifestations sufficient to identify chronic depression" were found in the Veteran's medical history. However, the VA examiner noted that there were manifestations of chronic pain, which is a major source of depression, and also noted the Veteran's divorce process in 2001.

The Veteran is competent to report feelings of anxiety, low mood, and insomnia. He reports a history of these feelings, including and related to his time in service. The Veteran is also competent to report that he has been told that he has depression, and that has been receiving related treatment.

Here, the most probative evidence is the STRs and report of the May 2017 VA psychiatric examination with medical opinion, indicating that the Veteran's disability is not related to service. In a June 1985 Report of Medical History, the Veteran denied nervous trouble of any sort, depression or excessive worry, and frequent trouble sleeping. Regarding the Veteran's first period of service, the October 1987 Report of Medical Examination shows the Veteran was clinically normal for psychiatric evaluation. While the STRs later show that the Veteran had complaints of depression in service in early 1991, his June 1991 Report of Medical Examination was clinically normal for psychiatric evaluation. A subsequent June 1996 Report of Medical Examination was also clinically normal for psychiatric evaluation, though there were notations of depression. Such evidence suggests that any depression in service was acute, transitory, and resolved by the time his discharge from active duty. The VA examiner explained that after a review of the objective medical evidence no "characteristic manifestations sufficient to identify chronic depression" were found in the Veteran's medical history. In addition, the VA examiner opined that the Veteran's diagnosed major depressive disorder, has no nexus to his military service in Southwest Asia from February, 1991 to April, 1991, as he began psychiatric treatment in 2001, 10 years post-military service. The January 2005 Report of Medical Examination was clinically normal for psychiatric evaluation, but the June 2005 VA examination found that the Veteran has some mild depressive symptoms. Depressive disorder NOS was then identified. The Board finds this to be highly probative. To the extent the Veteran's lay statements would support a finding of depression attributable to his time in service, the medical evidence as to etiology is far more probative and credible than his lay opinion, and is therefore afforded greater probative weight.

In addition, the most probative evidence also establishes that the Veteran does not have PTSD due to an in-service stressor. The February 2015 and May 2017 VA examinations show that any impressions of PTSD are only attributable to post service events. The February 2015 VA examiner found that the Veteran does not meet the criteria for identifying PTSD, despite meeting the stressor criteria. The May 2017 VA examiner noted that there were manifestations of chronic pain, which is a major source of depression, and also attributed symptoms to the Veteran's divorce process in 2001. In rendering its opinion, the Board has considered the Veteran's lay statements about his manifestations before, during, and after service. To the extent these are lay statements that contradict the VA examinations, the Board finds that the VA examinations, including from May 2017, are far more competent, probative, and credible. Consequently, service connection for an acquired psychiatric disorder to include PTSD is not warranted.

As the Veteran has no currently service-connected disabilities, secondary service connection is also not warranted. 38 C.F.R. § 3.310.


V. TDIU

In order to establish entitlement to TDIU due to service-connected disabilities, there must be impairment so severe that it is impossible for the average person to follow a substantially gainful occupation. See 38 U.S.C.A. § 1155; 38 C.F.R. 
§§ 3.340, 3.341, 4.16. In reaching such a determination, the central inquiry is "whether the veteran's service connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529
(1993). 

Total disability ratings for compensation may be assigned, in circumstances where the scheduler rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities provided that, if there is only one such disability, this disability shall be ratable at 60 percent or more, and that, if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more with sufficient additional disability to bring the combined rating to 70 percent or more. See 38 C.F.R. § 4.16 (a).

In a related provision, 38 C.F.R. § 4.16 (b) allows for a Veteran who does not meet the threshold requirements for the assignment of a total rating based on individual unemployability, but who is otherwise deemed by the Director of Compensation & Pension Services to be unable to secure and follow a substantially gainful occupation by reason of a service-connected disability or disabilities, to be rated totally disabled.
 
In the present case, service connection has not been granted for any disabilities.

As the Veteran does not have any service-connected disabilities, and entitlement to TDIU is based solely on service-connected disabilities, TDIU must be denied.


VII. General Considerations

Although the Veteran served in the Southwest Asia Theater of Operations during the Persian Gulf War, there is no disability due to undiagnosed illness and medically unexplained chronic multisymptom illnesses. See 38 C.F.R. § 3.317.

Neither the Veteran nor his representative has raised any other issues, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).

In reaching these conclusions, the Board finds that the preponderance of the evidence is against the claims. As such, the benefit of the doubt rule is not for application, and the claims must be denied. 38 U.S.C. § 5107 (b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).




ORDER

Entitlement to service connection for radiculopathy of the right lower extremity is denied.

Entitlement to service connection for radiculopathy of the left lower extremity is denied.

Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD), as secondary to service-connected disease or injury, is denied.

Entitlement to a total rating for compensation on the basis of individual unemployability (TDIU) is denied.



____________________________________________
H. N. SCHWARTZ
Veterans Law Judge, Board of Veterans' Appeals





Department of Veterans Affairs